


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| SOUTH DAKOTA FARM BUREAU, INC.; SOUTH DAKOTA SHEEP GROWERS ASSOCIATION, INC.; HAVERHALS FEEDLOT, INC.; SJOVALL FEEDYARD, INC.; FRANK D. BROST; DONALD TESCH; WILLIAM A. AESCHLIMANN; SPEAR H RANCH, INC.; MARSTON HOLBEN; MONTANA-DAKOTA UTILITIES CO,; NORTHWESTERN PUBLIC SERVICE; And OTTER TAIL POWER COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF SOUTH DAKOTA; MARK W. BARNETT, in his official capacity as Attorney General of South Dakota; and JOYCE HAZELTINE, in her official capacity as Secretary of State of South Dakota, <br><br> Defendants. <br><br> DAKOTA RURAL ACTION; and SOUTH DAKOTA RESOURCES COALITION <br><br> Defendant-Intervenors. | No. 99-CV-3018 CK <br><br><br> **DEFENDANT-INTERVENORS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant-intervenors, Dakota Rural Action ("DRA") and South Dakota Resources Coalition ("SDRC") hereby submit this Motion for Partial Summary Judgment. Fed. R. Civ. P. 56(a). Pursuant to this Court's Standard Operating Procedures, DRA and SDRC submitted these issues to the Plaintiffs on October

4, 2000 for discussion and possible stipulation. Counsel for the Plaintiffs responded that they would not stipulate to any of the issues.

## I. BACKGROUND

On November 3, 1998, the people of South Dakota amended their State Constitution to ban, with multiple exceptions, incorporated and syndicated farms. S.D. Const. Art. XVII, §§ 21-24 ("Amendment E"). Specifically, Amendment E bans non-family, limited liability agricultural operations (henceforth, "non-family, corporate farms"). The plaintiffs seek in this case to overturn Amendment E.

Amendment E aims to make farm owners responsible for environmental contamination. To do this, Amendment E seeks to limit the availability of reduced risk exposure to family farmers who are personally involved in the farming operation. Limited liability status allows owners of agricultural operations to avoid personal liability for environmental contamination. For example, large hog operations have a propensity to produce an enormous amount of waste that saturates soil, deluges water channels, and contaminates groundwater. Family farmers, even if they do enjoy limited liability, are exempt under Amendment E due to their obvious disincentive to "foul their own nest."

In addition, Amendment E seeks to turn the tide on the adverse social and economic impacts imposed on rural communities by non-family, corporate farms. Limited liability entities enjoy limited risk exposure and tax

2

advantages which allows them to attract investment capital with which expand. This creates anti-competitive forces that squeeze traditional, family farmers out of the market. The inability of the family farmer to compete changes social demographics in rural communities by replacing the independent farmer with disempowered sharecroppers.

## II. INTRODUCTION

DRA and SDRC request that this Court grant partial summary judgment on three issues of law for which there are no material factual disputes.

(1) The South Dakota Farm Bureau, Inc. ("SDFB") and the South Dakota Sheep Growers Association, Inc. ("SDSGA") do not have standing to bring this suit;

(2) Amendment E does not impact the ability of the owners or growers of livestock to forward contract with packers unless ownership of the livestock transfers from the producer to the packer more than two weeks prior to slaughter; and,

(3) The grandfather provision in section 22(5) of Amendment E exempts all livestock produced under contract for the duration of the contract if the contract was in effect at the time Amendment E was passed.

## III. STATEMENT OF FACTS

As required by Local Rule 56.1(B), the undisputed material facts necessary for this motion are set forth separately in an accompanying Statement of Material Facts

3

(hereinafter "SMF"). The supporting documentary evidence is attached to the SMF in Appendixes A-C.

## IV.   SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate under the Federal Rules of Civil Procedure when it appears to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). There are no genuine issues of material fact regarding the issues in this motion and therefore partial summary judgment is appropriate. Accordingly, this motion will limit the issues for trial.

## V.   ARGUMENT

### A.   THE FARM BUREAU AND THE SHEEP GROWERS ASSOCIATION DO NOT HAVE STANDING

The case-or-controversy requirement in Article III of the United States Constitution requires a litigant to establish standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To have standing, a Plaintiff must have suffered an injury that is "concrete and particularized and actual or imminent." Id. It is not sufficient if the injury is merely "conjectural or hypothetical." Id. Further, to establish standing, the Plaintiffs may not rest

4

on general allegations in the pleadings and must offer specific facts set forth by affidavit or other evidence. Id. at 561.

For an organization to have standing, its members must be directly affected and have an individualized injury. Sierra Club v. Morton, 405 U.S. 727, 734-40 (1972). Thus, absent an injury to a member, the organization lacks standing. Id. at 739 ("a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected").

Plaintiffs SDFB and SDSGA have not produced any evidence that their members have suffered the requisite harm to satisfy the Constitutional requirements for standing. In discovery, DRA and SDRC asked SDFB and SDSGA to:

> Please provide any and all documents in your possession, custody, or control that relate to or touch on changes in your members' revenues or business opportunities due to the passage of Amendment E.

SDFB responded that it had "not surveyed or questioned its members and [did] not have such statistical information in its possession." SMF 1; App. A.1. SDSGA responded that the request was "not applicable." SMF 2; App. A.2.

Further, SDFB and SDSGA failed to offer any evidence of particularized injury to any individual member in their depositions. Neither SDFB nor SDSGA had any information regarding the business structure of their members. Thus,

5

far from alleging particularized injury to any of their members, SDFB and SDSGA had no idea how many members were non-exempt, corporations or syndicates and therefore affected by Amendment E. SMF 3, 4; App. A.3-A.4. In addition, SDSGA conceded that their organization is not impacted by Amendment E. SMF 4; App. A.4. The same is necessarily true of SDFB.

Because SDFB and SDSGA have not established individualized harm to any of their members, DRA and SDRC seek summary judgment that both SDFB and SDSGA lack standing. Sierra v. Morton, 405 U.S. at 739.

**B.   AMENDMENT E DOES NOT IMPACT FORWARD CONTRACTING**

Forward contracts are a risk management, marketing tool. SMF 7; App. B.3. The USDA defines a forward contract as:

> an agreement for the purchase of cattle, executed in advance of slaughter, under which the base price is established by reference to prices quoted on the Chicago Mercantile Exchange, or other comparable publicly available prices.

65 Fed. Reg. 14652, 14669 (March 17, 2000); SMF 6; App. B.2. Dr. Luther Tweeten, an economist and expert witness for the Plaintiffs, stated that forward contracts are marketing contracts that allow producers to sell livestock forward at a specific price formula, thereby reducing variation in prices. SMF 8-11; App. B.4-B.5.

There is no provision in Amendment E that directly targets marketing tools such as forward contracts.

6

Amendment E simply prohibits non-exempt, limited liability entities from engaging in farming. SMF 5; App. B.1. Farming is defined, in part, as the "ownership, keeping, or feeding of animals for the production of livestock." SMF 5; App. B.1.

The argument that Amendment E precludes forward contracts rests on the assumption that the packer is a non-qualifying, limited liability entity. To fall under the purview of Amendment E, however, the packer must be engaged in the "ownership, keeping or feeding" of livestock. SMF 5; App. B.1. To avoid imposing liability on packers that take ownership of livestock prior to slaughter, Amendment E exempts "livestock purchased for slaughter within two weeks of the purchase date." SMF 12; App. B.1.[1] Thus, Amendment E only imposes liability on a packer in the very unlikely event that the packer holds on to the livestock for over two weeks before sending the animals to slaughter. SMF 13, 15; App. B.4-B.6.

Practically, even if a packer does hold on to the livestock for more than two weeks, that will not likely affect the forward contract. The packer will not incur the

---

[1] Absent ownership, packers could only be engaging in "farming" within the meaning of Amendment E if they are "keeping and feeding" livestock. Clearly, the producer, not the packer, keeps and feeds the livestock. While some forward contracts include specifications to which the livestock must conform, that in no way rises to the level of the actual keeping and feeding of livestock. The packer may, for example, impose restrictions on weight that may impact how the producer feeds the livestock but it is still the producer, not the packer, that is engaged in the actual keeping and feeding of the animals.

7

cost of keeping and feeding livestock, as opposed to sending them directly to slaughter, unless it is justified by an unexpected situation. SMF 14; App. B.5. For example, upon taking ownership of the livestock, the packer may "decide [the livestock] need more finishing." Statement by Luther Tweeten, SMF 14; App. B.5. Alternatively, the packer may not be able slaughter the livestock immediately because "<u>it turns out</u> . . . they're overloaded with supplies already" (emphasis added). Statement by Luther Tweeten, SMF 14; App. B.5. Nevertheless, the packer must honor their contract by paying for the livestock on the date specified in the contract. SMF 14; App. B.5. Thus, at the time the packer entered into the forward contract, the packer would not have anticipated these situations. By the time the packer finds himself saddled with livestock that he is unwilling or unable to immediately slaughter, the forward contract has already been entered into and executed. In any event, this scenario "doesn't happen very often." Statement by Luther Tweeten, SMF 13; App. B.5.

Accordingly, DRA and SDRC seek summary judgment on the issue of forward contracting. Amendment E does not prohibit forward contracts.

C.  **AMENDMENT E "GRANDFATHERS" LIVESTOCK TO BE PRODUCED UNDER CONTRACT**

The "grandfather clause" in section 22(5) of Amendment E exempts livestock to be produced under contracts that were in effect as of the approval date of Amendment E. SMF 16;

8

App. B.1, C.1. Thus, all livestock produced under those contracts are exempt, not just the animals that were alive as of the approval date of Amendment E. Accordingly, the exemption could extend for a period of many years, depending on the duration of the contract. SMF 16; App. B.1, C.1.

For the foregoing reasons, DRA and SDRC seek summary judgment that Amendment E "grandfathers in" livestock produced under contract for the duration of the contract if the contract was in effect on the approval date of Amendment E.

## VI.  CONCLUSION

For the reasons given above, DRA and SDRC respectfully request that this Court grant partial summary judgment thereby limiting the issues for trial.

Dated: *13 Oct 2000*

Respectfully submitted,

*John H. Davidson* (signature)
John H. Davidson
(S.D. Bar # 1726)
University of South
Dakota School of Law,
Room 213
414 East Clark Street
Vermillion, S.D. 57069
(605) 677-6341

Virginia Brannon
University of Denver
Forbes House
1714 Poplar Street
Denver, CO 80220
(303) 871-6819

James J. Tutchton
Earthjustice Legal
Defense Fund
University of Denver
Forbes House
1714 Poplar Street
Denver, CO  80220
(303) 871-6034

Attorneys for Defendant-
Intervenors: Dakota Rural
Action and South Dakota
Resources Coalition.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of DEFENDANT-INTERVENORS' MOTION FOR PARTIAL SUMMARY JUDGMENT and MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT in the case of *South Dakota Farm Bureau et al. v. State of South Dakota, Barnett & Hazeltine,* was served by United States mail, first class, postage prepaid upon:

Richard O. Gregerson
Attorney at Law
P.O. Box 5027
Sioux Falls, South Dakota 57117-5027

Timothy S. Bishop
Steffen N. Johnson
Nicola Jackson
Kyle F. Waldinger
Michael F. Rosenblum
Mayer, Brown & Platt
190 S. LaSalle Street
Chicago, Illinois 60603

David S. Day
c/o Woods, Fuller, Shultz & Smith
P.O. Box 5027
Sioux Falls, S.D. 57117-5027

David Gerdes
Attorney at Law
P.O. Box 160
Pierre, S.D. 57501-0160

Roxanne Giedd
Assistant Attorney General
Office of the Attorney General
500 East Capitol Avenue
Pierre, S.D. 57501-507

Thomas P. Tonner
Attorney at Law
P.O. Box 1456
Aberdeen, S.D. 57402

Timothy J. Langley
401 East 8th Street
Sioux Falls, S.D. 57103

Robert Broom
Broom Johnson & Clarkson
410 Flatiron Building
1722 St. Mary's Building
Omaha, NE 68102

on this 13TH day of October, 2000

_____
John H. Davidson