UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

**FILED**

OCT 2 3 2000

CLERK

| | | |
|---|---|---|
| SOUTH DAKOTA FARM BUREAU, INC., | ) | Civ. 99-3018 |
| SOUTH DAKOTA SHEEP GROWERS | ) | |
| ASSOCIATION, INC.; HAVERHALS | ) | |
| FEEDLOT, INC.; SJOVALL FEEDYARD, | ) | |
| INC.; FRANK D. BROST; DONALD TESCH; | ) | |
| WILLIAM A. AESCHLIMANN; SPEAR H | ) | |
| RANCH, INC.; MARSTON HOLBEN, | ) | |
| MARSTON AND MARION HOLBEN | ) | |
| FAMILY TRUST; MONTANA-DAKOTA | ) | |
| UTILITIES CO.; NORTHWESTERN | ) | |
| PUBLIC SERVICE; and OTTER TAIL | ) | |
| POWER COMPANY, | ) | AMICUS CURIAE BRIEF SUBMITTED |
| | ) | ON BEHALF OF EVERETT HOLSTEIN, |
| Plaintiffs, | ) | RUDY MEDUNA AND DAN HODGES |
| | ) | IN SUPPORT OF DEFENDANTS' AND |
| vs. | ) | DEFENDANTS/INTERVENORS' |
| | ) | MOTIONS FOR PARTIAL |
| | ) | SUMMARY JUDGMENT |
| JOYCE HAZELTINE, in her official | ) | |
| capacity as Secretary of State of South | ) | |
| Dakota, and MARK W. BARNETT, in his | ) | |
| official capacity as Attorney General of | ) | |
| South Dakota, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAKOTA RURAL ACTION and SOUTH | ) | |
| DAKOTA RESOURCES COALITION, | ) | |
| | ) | |
| Defendants/Intervenors. | ) | |

## I.   INTRODUCTION

Defendants and Defendants/Intervenors have filed Motions for Partial Summary Judgment providing sound arguments to the Court as to why several aspects of Plaintiffs' First Amended Complaint cannot survive a summary judgment analysis.   In keeping with the Motion for Leave to File an Amicus Curiae Brief and this Court's Order granting the same this Brief is submitted on behalf of Everett Holstein, Rudy Meduna, and Dan Hodges who were identified in the Motion as Nebraska farmers with a profound interest in the continued viability of Amendment E in South Dakota because of its strong similarity to Nebraska's Initiative 300 which has withstood several constitutional challenges over the years.[1]  Since Nebraska has substantial experience with equal protection attacks this Brief will address primarily the equal protection arguments with some discussion on the forward contracts issue and the utility issue.

## II.  ARGUMENT

### A. The Equal Protection Issue.

In assessing an equal protection claim, there is a fundamental principle of analysis i.e., "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it".  McGowan v. Maryland, 366 U.S. 420, 425 (1961).

There is no question that the classifications involved in Amendment E do not create any suspect class or address any fundamental right -- and Plaintiffs cannot contend otherwise.  This simply means that the Court is to apply only minimal scrutiny under equal protection analysis. Police Department v. Mosley, 408 U.S. 92 (1972); Vance v. Bradley, 440 U.S. 93 (1979).  Under the minimal scrutiny approach, a classification will be upheld where it is a rational means of

---

[1]A copy of Initiative 300, for the Court's reference, is attached hereto.

promoting a legitimate government interest or purpose.  <u>Metropolitan Life Insurance Company</u>

<u>v. Ward</u>, 470 U.S. 869, 875 (1985); <u>Vance v. Bradley</u>, <u>supra</u> 440 U.S. at 97; <u>Minnesota v. Clover</u>

<u>Leaf Creamery Company</u>, 449 U.S. 456, 461-62 (1981).  Indeed, in the area of economic

regulation, "states are accorded wide latitude" and in this "economic sphere it is only the

invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the

Fourteenth Amendment".  <u>New Orleans v. Duke</u>, 472 U.S. 297, 303-04 (1976).

    The Supreme Court has made it clear that it intends to adhere to the principle of

presumptive validity of duly passed state laws such as Amendment E.  It has noted:

> Social and economic legislation, like the statute at issue in this case, moreover,
> 'carries with it a presumption of rationality that can only be overcome by a clear
> showing of arbitrariness and irrationality'. . . . '[W]e will not overturn such a
> statute unless the varying treatment of different groups or persons is so unrelated
> to the achievement of any combination of legislative purposes that we can only
> conclude that the legislature's actions were irrational.' . . . those challenging the
> legislative judgment must convince us 'that the legislative facts on which the
> classification is apparently based could not reasonably be conceived to be true by
> the governmental decision maker. . . ."

<u>Kadrmas v. Dickinson Public Schools</u>, 487 U.S. 450, 463 (1988).  The Supreme Court went on

to describe the burden as "a <u>heavy burden</u> of demonstrating that the challenged statute is both

arbitrary and irrational".  <u>Id.</u> (emphasis supplied).  (citations omitted). See also <u>Western and</u>

<u>Southern Life Insurance Co. v. Board of Equalization</u>, 451 U.S. 648, 668 (1981).

    The standard imposed by the United States Supreme Court in reviewing the scheme of

classification is clear:

> When the classification made by the Legislature is called in question, if any state
> of facts reasonably can be conceived that would sustain it, there is a presumption
> of the existence of that state of facts, and one who assails the classification must
> carry the burden of showing by a resort to common knowledge or other matters
> which may be judicially noticed, or to other legitimate proof that the action is
> arbitrary.

2

Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 209 (1934).

> But states are not required to convince the courts of the correctness of their legislative judgments, rather 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision makers.'

Minnesota v. Clover Leaf Creamery Co., supra, 449 U.S. at 464 (1981)

The strong presumption of constitutionality can only be overcome if the party challenging them negates "every conceivable basis which might support it." FCC v. Beach Communications, Inc., 508 U.S. 307, 315, 112 S. Ct. 2096, 2101, 124 L. Ed.2d 211 (1993).  The legislative choice in making a distinction in treatment between two classifications "is not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data." Id.   Furthermore the court is "not bound by explanation of the [policy's] rationality that may be offered by litigants or other courts." Barket, Levy & Fine v. St. Louis Thermal Energy, 21 F.3d 237, 240 (8th Circuit, 1994) (quoting Kadrmas, supra 487 U.S. at 463) The court may even hypothesize the motivations of those who passed the Constitutional Amendment in question. Malmad v. Thornburgh, 625 F2d 565, 569 (3rd Cir. 1980) (see cases cited therein).  It is unimportant that the classification may not be successful in supporting the intended purpose.  All that is required is that legislators (in this case, voters) could rationally believe the classification would promote the objectives.   Hawaii Housing Authority v. Midkiff, 467 U.S.  229 (1984);  Western & Southern Life Ins. Co. v. State Board of Equalization, 451 U.S. 148, 671-672, 1981); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 466 (1981); Vance v.  Bradley, 440 U.S. 93, 112 (1979).  Ferguson v. Skrupa, 372 U.S. 726, 732 (1963).

It is also well-established that in adopting regulations to attack the problem, the state

need not attempt complete elimination, but may seek a partial solution.  See, for example, <u>New Orleans v. Duke</u>, 472 U.S. 297, 303 (1976).

Every constitutional  attack on Initiative 300 in Nebraska has been unsuccessful. The Nebraska Supreme Court in <u>Omaha National Bank v. Spire</u>, 223 Neb. 209 (1986), had absolutely no difficulty in determining that Initiative 300 related to a legitimate state interest.  The Court also noted that in view of the deference given to legislative determinations "it would appear that the U.S. Supreme Court would even more readily defer to the state constitutional determination as to the desirability of particular constitutional discriminations." <u>Id.</u> at 231.  Likewise, the United States Court of Appeals for the Eighth Circuit, in rejecting an equal protection challenge to Initiative 300, had:

> little difficulty concluding . . . that MSM has failed to carry its 'heavy burden' of showing that Nebraska's prohibition on non-family corporate farm ownership is arbitrary and irrational.

<u>MSM Farms v. Spire</u>, <u>supra</u> 927 F.2d at 334.

Most recently the Nebraska Supreme Court again upheld Initiative 300 in the face of an equal protection attack with respect to classifications within the constitutional provision.  <u>Hall v. Progress Pig, Inc.</u>, 259 Neb. 407, 417-421, 610 N.W.2d 420, 429-431(2000)  In doing so the Court utilized the very analysis set forth above and cited with approval the Eighth Circuit's conclusion that the policy of Initiative 300 "represented a legitimate state interest under the Equal Protection Clause." <u>Id.</u> 259 Neb. at 419, 610 N.W.2d at 430-431.  The Court went on to quote the <u>MSM</u> decision:

> "Whether in fact the law will meet its objectives is not the question: the equal protection clause is satisfied if the people of Nebraska could rationally have decided that prohibiting non-family farm corporations might protect an agriculture where families own and work the land." <u>Id.</u>

4

The people of South Dakota have also rationally decided just as did the people of Nebraska and they, too, have satisfied the equal protection clause.

In the end it is absolutely clear that it is a legitimate state interest or purpose to seek the prevention of the:

> concentration of agricultural land, and the production of food therefrom, in the hands of business corporations to the detriment of traditional family units and corporate aggregations of natural persons primarily engaged in farming.

State ex rel Webster v. Lehndorff Geneva, 744 S.W.2d 801, 805(Mo., 1988).

> The Hawaii legislature enacted its Land Reform Act not to benefit a particular class of identifiable individuals but to attack certain perceived evils of concentrated land ownership in Hawaii -- a legitimate public purpose.

Hawaii Housing Authority v. Midkiff, supra, 467 U.S. at 245 (emphasis supplied).

In Asbury v. Cass County, 326 U.S. 207 at 214, the United States Supreme Court approved state required corporate divestments of farmland and stated:

> We cannot say there are not differences between corporations generally and those falling into the excepted classes which may appropriately receive recognition in the legislative application of a state policy against the concentration of farming lands in corporate ownership.

See also Ferguson v. Skrupa, 372 U.S. 726 (1963) (limitations on who could engage in business of debt adjustment upheld); North Dakota State Board of Pharmacy v. Schneider Drug Store, 414 U.S. 153 (1973) (limitation on who can own or operate a pharmacy upheld); New Orleans v. Duke, 472 U.S. 297 (1976) (limitation of who could operate food street vending).

There is no question that Nebraska and South Dakota have a legitimate governmental interest in curbing the concentration of landholding and agricultural activities in certain kinds of corporations which have neither familial ownership relationship nor any direct participation

(either by residency or daily involvement) in the agricultural business.

There is also no question that Nebraska and South Dakota have a legitimate governmental interest in protecting family rural life and values. Village of Belle Terre v. Borraas, 416 U.S. 1 (1974) (a state has a legitimate interest in protecting family life and values.). See also MSM. Inc. v. Spire, supra, 927 F.2d at 333.

As already noted, a court need only search for some rational relationship between the classification and one or more of the legitimate purposes and may rely on any state of facts which can reasonably be conceived to sustain the classification.

There is no question that a state can make distinctions between business entities.  See Western & Southern Life Insurance Company v. State Board of Equalization, 451 U.S. 648, 669 (1981) (distinction between foreign and domestic corporations.); G.D. Searle & Company v. Cohn, 455 U.S. 404 (1982) (distinction between unrepresented foreign corporation as opposed to domestic corporation and represented foreign corporation.); Northeast Bancorp v. Board of Governors, supra, 472 U.S. 159 at 177-78 (1985) (distinction between out-of-state corporations domiciled in region and out-of-state corporations domiciled in other parts of country.); Asbury Hospital v. Cass, supra 326 U.S. at 214-15 (distinction between general corporation as opposed to corporation organized to deal in farmlands and cooperative corporations owned by operating farmers.); State ex rel Webster v. Lehndorff Geneva, supra 744 S.W.2d at 805 (distinction between corporations as opposed to corporations receiving 2/3 income from farming or fitting within definition of family farm corporation including kinship and actual operation.).

For all of the foregoing reasons Defendant's Motion for Partial Summary Judgment on Plaintiffs' equal protection claims should be granted.

6

### B.  The forward contracting and utility issues

### 1.    Applicable principles of interpretation

Although the issues involving forward contracts and the effect on utility companies are essentially separate and distinct issues they both involve application of some of the same principles of statutory or constitutional interpretation.  The Defendants have cited some of those principles.[2]  (see pp.2-3 of Defendants' Brief).  A review of those principles and other South Dakota court decisions with other interpretative principles is helpful in assessing the forward contracts and utility issues raised in this case.

As noted in <u>Poppen v. Walker</u> (and in Defendants' Brief at p. 3)

"First and foremost, the object of construing a constitution is to give effect to the intent of the framers of the organic law and of the people adopting it.  The Supreme Court has the right to construe a constitutional provision in accordance with what it perceives to be its plain meaning.  When words in a constitutional provision are clear and unambiguous, they are to be given their natural, usual meaning and are to be understood in the sense in which they are popularly employed.  If the meaning of a term is unclear, the Court may look to the intent of the drafting body."

<u>Poppen v. Walker</u>, 520 N.W.2d 238, 242 (S.D. 1994) (see also cases cited therein)

The South Dakota Supreme Court has summarized many other principles that are pertinent in this case:

"Challenges to the constitutionality of a statute meet formidable restrictions."  <u>State v. Hauge</u>, 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175. ........ We recognize a strong presumption of constitutionality.  <u>Kyllo v. Panzer</u>, 535 N.W.2d 896, 898 (S.D. 1995) (citing <u>Specht v. City of Sioux Falls</u>, 526 N.W.2d 727, 729 (S.D. 1995)).  To be invalidated a statute must be proved a breach of legislative power beyond a reasonable doubt.  <u>City of Chamberlain v. R.E. Lien, Inc.</u>, 521 N.W.2d 130, 131 (S.D. 1994).  Only when the unconstitutionality of a statute is plainly

---

[2]The Defendant are correct that this Court should look to rules of statutory interpretation employed by the state court in interpreting this state constitutional amendment.  See also e.g. <u>Olympus Aluminum Products, Inc. v. Kehm Enterprises, Ltd.</u>, 930 F. Supp 1295,  (ND Iowa 1996).

and unmistakably shown will we declare it repugnant to our constitution.  <u>South Dakota Educ. Ass'n v. Barnett</u>, 1998 SD 84, ¶ 22, 582 N.W.2d 386, 392 (quoting <u>Poppen v. Walker</u>, 520 N.W.2d 238, 241 (S.D. 1994) (citations omitted)).  "If a statute can be construed so as not to violate the constitution, that construction must be adopted.'  <u>Cary v. City of Rapid City</u>, 1997 SD 18, ¶ 10, 559 N.W.2d 891, 893 (citation omitted).
<u>State of South Dakota v. Allison</u>, 607 N.W.2d 1, 2 (2000).

The Court in <u>Allison</u> quoted approvingly the following important principle:

> It is a fundamental proposition of law that where a court is faced with two possible interpretations of a statute or ordinance, one which would render it constitutional and another which would render it unconstitutional, it is the duty of the court to choose that interpretation which will uphold the validity of the statute or ordinance.
> <u>Id.</u> at 5.

These principles are consistent with federal court decisions on assessing the constitutionality of a statute or state constitutional provision.  See e.g.  <u>Planned Parenthood of Minnesota v. State of Minnesota</u>, 910 F.2d 479, 482 (8th Cir. 1990) ("If a law is susceptible of a reasonable interpretation which supports its constitutionality the court must accord the law that meaning ."); <u>Irving v. Clark</u>, 758 F.2d 1260 (8th Cir. 1985) ("A statute should be construed to make sense . . . so as to support, rather than defeat, its constitutionality"); <u>Planned Parenthood, Sioux Falls Clinic v. Miller</u>, 63 F.3d 1452 (8th Cir. 1995) cert. denied 134 L.Ed 2d 679.  (". . . courts must read statutes as constitutional whenever possible . . .") [(citing <u>State v. Stone</u>, 467 N.W.2d 905, 906 (S.D. 1991)]; <u>Fitz v. Dolyak</u>, 712 F.2d 330, 333 (8th Cir. 1983).

Furthermore, in determining the constitutionality of a South Dakota constitutional provision a court may

> "also consider the circumstances under which a constitutional provision was formed, the general spirit of the times and the prevailing sentiment of the people."

<u>Poppen v. Walker</u>, <u>supra</u>, 520 N.W.2d at 246 - 247.

8

Finally, the South Dakota Supreme Court has made it clear that it

"...will not construe a constitutional provision to arrive at a strained, impractical, or absurd result."

State of South Dakota v. Allison, supra 607 N.W.2d at 5.  See also Brim v. South

Dakota Bd. Of Pardons and Paroles, 563 N.W. 2d 812, 816(1997)

### 2. Forward Contracting

Defendants-Intervenors correctly argue that forward contracting is not covered by Amendment E.  The Plaintiffs seemed to argue that because future contracts and livestock purchase for slaughter are exempted under Amendment E and because there is no exemption for forward contracts, that means they are prohibited by Amendment E.   That is not the case. Plaintiffs skip the first step in any analysis to determine what is prohibited.  Defendant-Intervenors correctly note that forward contracts are simply a marketing tool and do not involve owning, keeping or feeding of the livestock.  There is no need to mention forward contracts as an exemption because they are not covered by the law in the first place.  In forward contracts the ownership remains with the producer until the packer takes delivery sometime just prior to slaughter.  Furthermore, the packer, notwithstanding Plaintiffs' apparent argument otherwise, does not "keep and feed" livestock simply because the packer may set some specifications for that activity.  It is the entity actually performing and/or controlling those tasks that must comply with Amendment E.  Unlike a forward contract, future contracts are mentioned because there is at least some possibility that they might be interpreted to involve some indices of ownership in the livestock itself.  That is not the case with a forward contract.  Thus, when one takes the language of the Amendment and applies it using the plain meaning of the words and avoids construing the Amendment in strained,  impractical or absurd way, and keeps paramount the

9

intent of the constitutional amendment there can be no question that forward contracts as raised by the Plaintiffs are not covered by Amendment E and partial summary judgment on this issue is appropriate.

### 3. The Utility Issue

The Defendants are correct in their assertion that issues raised by the utility companies that are contingent on an event in the future that has not yet occurred are clearly not yet ripe for judicial determination. Thus, at the very least, those issues raised by the utility companies that are dependent on deregulation cannot be resolved at this time and are properly dismissed on summary judgment.

To the extent that the issue raised by the utility companies regarding future easements or power lines on agricultural land may be ripe the Court can clearly dispose of that issue on partial summary judgment. Any interpretation that the people of the State of South Dakota intended to prohibit power companies from having easements across farm land when that land can continue to be used by the family farmer(or other permissible entity under Amendment E) for agricultural purposes is a construction of Amendment E that arrives at "a strained impractical [and] absurd results". State of South Dakota v. Allison, supra 607 N.W.2d at 5. This Court can clearly interpret Amendment E to conclude that the interpretation of Amendment E on the easement issue advocated by the Plaintiffs is incorrect and the Court should render an interpretation that would clearly render it constitutional.[3] Thus, this Court should give effect to the intent of the framers of Amendment E to ensure family involvement in any farming done in South Dakota when the corporate structure is utilized. South Dakotans did not intend to prohibit delivery of

---

[3]Even if Plaintiffs are correct in their strained, impractical and absurd interpretation of Amendment E there is still a question as to whether their interpretation, however, would result in a determination of unconstitutionality.

electrical power by non-family farm corporations to family farms and elsewhere when that incidentally may involve some "use" of agricultural land. This is particularly so because the underlying agricultural activity by a qualified entity still continues on the same land. Amendment E is about corporate <u>farming</u> not power lines.

The Defendant's Motion for Partial Summary Judgment on this issue should be granted as well.

## III. CONCLUSION

For all the foregoing reasons and for the issues advanced by Defendants and Defendants-Intervenors, Amicus Curiae submit that the Motions for Partial Summary Judgment should be granted in their entirety.

DATED this _20th_ day of October, 2000.

EVERETT HOLSTEIN, RUDY MEDUNA AND
DAN HODGES, AMICUS CURIAE,

By: _____
Robert V. Broom - #10444 (Nebraska)
Broom, Johnson & Clarkson
310 Flatiron Building
1722 St. Mary's Avenue
Omaha, Nebraska 68102
(402) 346-8323

and

Timothy J. Langley - #410
Attorney at Law
401 E. 8th Street
Suite #200
Sioux Falls, South Dakota 57103
(605) 330-2500

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Amicus Curiae Brief in the matter of <u>South Dakota Farm Bureau, Inc., et al. v. State of South Dakota, et al.</u>, was served by regular United States mail, postage prepaid, to:

Richard Gregerson
Attorney at Law
P. O. Box 5027
Sioux Falls, SD  57117-5027

Timothy S. Bishop
Steffen N. Johnson
Nicola Jackson
Mayer, Brown & Platt
190 South LaSalle Street
Chicago, IL  60603

David S. Day
Woods, Fuller, Shultz & Smith
P. O. Box 5027
Sioux Falls, SD  57117-5027

David A. Gerdes
Attorney at Law
P. O. Box 160
Pierre, SD  57501-0160

Roxanne Giedd
Assistant Attorney General
500 East Capitol Avenue
Pierre, SD  57501-5070

Thomas P. Tonner
Attorney at Law
P. O. Box 1456
Aberdeen, SD  57402-1456

John H. Davidson
USD Law School
414 East Clark Street, Room 215
Vermillion, SD  57069

Virginia Brannon
Jay Tutchton
University of Denver
Forbes House
1714 Poplar Street
Denver, CO  80220

Timothy J. Langley
Attorney at Law
401 East 8th Street, #200
Sioux Falls, SD  57103

On this 20TH day of October, 2000.

Robert V. Broom