

FILED
NOV 0 8 2000

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

SOUTH DAKOTA FARM BUREAU, INC.; SOUTH DAKOTA SHEEP GROWERS ASSOCIATION, INC.; HAVERHALS FEEDLOT, INC.; SJOVALL FEEDYARD, INC.; FRANK D. BROST; DONALD TESCH, WILLIAM A. AESCHLIMANN; SPEAR H RANCH, INC.; MARSTON HOLBEN; MARSTON AND MARION HOLBEN FAMILY TRUST; MONTANA-DAKOTA UTILITIES CO.; NORTH-WESTERN PUBLIC SERVICE; and OTTER TAIL POWER COMPANY,

    Plaintiffs,

vs.

JOYCE HAZELTINE, in her official capacity as Secretary of State of South Dakota and MARK W. BARNETT, in his official capacity as Attorney General of South Dakota,

    Defendants,

and

DAKOTA RURAL ACTION and SOUTH DAKOTA RESOURCES COALITION,

    Defendant-Intervenors.

CIV. 99-3018

SOUTH DAKOTA FARM BUREAU, INC.'S AND SOUTH DAKOTA SHEEP GROWERS ASSOCIATION, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING STANDING

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

- 2 -

Defendant-intervenors ask this Court to grant partial summary judgment in their favor against plaintiffs South Dakota Farm Bureau, Inc. ("SDFB") and South Dakota Sheep Growers Association, Inc. ("SDSGA") on the ground that these community-based farm organizations do not have standing to litigate this action. Defendant-intervenors' motion is wholly without merit. Based on the evidence developed in discovery in this case—including the production of a SDFB membership roster listing the names of three plaintiffs—there is no question that SDFB has standing by virtue of harm to its members. Moreover, as substantiated by the affidavits filed concurrently with this brief, there are, in fact, *five* individual plaintiffs who belong to SDFB and/or SDSGA. Every one of those plaintiffs has necessarily and demonstrably suffered harm as a direct result of Amendment E's proscriptions against corporate farming. Because SDFB and SDSGA members have been injured "in fact," the organizations have standing to raise claims on their behalf before this Court. Accordingly, defendant-intervenors' motion to dismiss SDFB and SDSGA from this case should be denied in its entirety.

## STATEMENT OF FACTS[1]

Amendment E to the South Dakota Constitution, S.D. Const. art. XVII, §§ 21-24, bars most corporate or other limited liability ownership of farms and livestock, as well as

---

[1] For a more comprehensive account of the relevant facts, SDFB and SDSGA refer the Court to their separate Local Rule 56.1(C) Statement of Material Facts in Opposition to Defendant-Intervenors' Motion for Partial Summary Judgment Regarding Standing (cited herein as "SOF").

- 3 -

most farming in corporate or other limited liability form. Advocates of Amendment E, like defendant-intervenors, claim that, in so doing, the measure shores up South Dakota agriculture against the tide of "anti-competitive forces that squeeze traditional family farmers out of the market." Def-Ints. Br. at 3. However, the family farmers who are plaintiffs in this lawsuit have experienced otherwise—they have found themselves divested of business arrangements and opportunities vital to their economic survival. SDFB and SDSGA have joined in this action in an effort to assist every one of their members that Amendment E impacts in the same, or similar, ways. SOF ¶¶ 7-10, 16-18.

## The Plaintiff Associations

***South Dakota Farm Bureau, Inc.*** SDFB is a grassroots, independent organization that represents the interests of more than 10,000 voluntary member farm, ranch, and rural families across the State. SOF ¶ 1. SDFB was founded to unite these farm families in order to collectively address and analyze their problems, formulate solutions, and improve their economic and social standing. *Id.* ¶ 3; Held Aff. ¶ 7, Ex. B. SDFB's members are a representative cross-section of South Dakota agriculture in general. They participate in a wide range of farming and ranching activities, including various types of livestock and grain production. SOF ¶ 2; Held Aff. ¶ 5, Ex. A. The business forms and methods they employ are likewise varied and correspond with those used by farmers throughout the State. SOF ¶ 2.

- 4 -

Because Amendment E is misguided, unlawful, and harms its members, SDFB has opposed the measure since before it was placed on the ballot. *Id.* ¶¶ 7, 9. Among those SDFB members whose economic well-being has been jeopardized, rather than secured, by Amendment E are plaintiffs John and Lorna Haverhals (owner/operators of Haverhals Feedlot, Inc.), Ivan Sjovall (owner/operator of Sjovall Feedyard, Inc.), Frank D. Brost, Donald Tesch, and William A. Aeschlimann. *Id.* ¶¶ 5-6.

**South Dakota Sheep Growers Association, Inc.** Like SDFB, SDSGA is an independent, non-governmental association. Of SDSGA's approximately 300 members, many are South Dakota lamb and sheep producers. SDSGA serves its members on an economic and personal level, striving to develop ideas and programs that will create a healthy climate for their work in State's sheep industry. SOF ¶¶ 11-12, 15; Aeschlimann Aff. ¶¶ 5-6, 9, Ex. A. As part of that effort, SDSGA supports legislation which is beneficial to the lamb, wool, and sheep industries, while opposing that which is detrimental. SOF ¶ 15.

SDSGA is challenging Amendment E for the same reason as SDFB—it has severe negative consequences for organization members. *Id.* at ¶¶ 16-17. Plaintiff William A. Aeschlimann, the owner of a family-run sheep business, is one of SDSGA's members who has been injured by Amendment E. *Id.* at ¶ 14.

### Amendment E's Impact On The Member-Plaintiffs

During discovery, the five member-plaintiffs each described some of the damaging effects of Amendment E on their South Dakota family-farm operations:

- 5 -

***Haverhals Feedlot, Inc.*** Haverhals Feedlot, Inc. ("HFI") feeds cattle owned by third parties, marketing between 7,000 to 9,000 animals annually. SOF ¶¶ 19, 22. Customers retain ownership of the cattle at all times, simply contracting with HFI to "finish" the livestock for sale and delivery to harvest facilities. *Id.* at ¶¶ 23, 28. Under Amendment E, however, HFI is prohibited from entering such retained-ownership contracts with any limited liability entities that fail to qualify as "family farm" corporations. *Id.* at ¶ 25; S.D. Const. art. XVII § 21, 22(1).

As a result of Amendment E's far-reaching ban on corporate farming, HFI has lost, and is certain to keep losing, both in-state and out-of-state customers. SOF ¶¶ 24-26. One customer chose not to deal with HFI because, due to the Amendment, he "did not feel clear on title and ownership." Another sent cattle to a different state, explaining that in South Dakota "[t]here was too much confusion and too many limitations on marketing options." *Id.* at ¶ 26.

One "marketing option" that Amendment E restricts is forward contracting—a tool that can, at least to some extent, be used eliminate the risk of fluctuating open market prices. HFI has been unable to forward contract more than two weeks in advance for the sale of its animals to limited liability buyers. Since the measure passed, HFI has not signed a single such contract with an out-of-state harvest facility, though it previously executed from eight to twenty a year. In refusing to enter forward contracts with HFI, the harvest facilities have specifically cited Amendment E as the reason. Amendment E's obstruction of forward

- 6 -

contracting has, in turn, deterred many customers from finishing cattle at HFI. SOF at ¶¶ 27-31.

*Sjovall Feedyard, Inc.* Sjovall Feedyard, Inc. ("SFI") is plagued by most of the same problems as HFI, since both are in the business of feeding cattle owned by third parties and finish a similar number of animals per year. SOF ¶¶ 33, 36. Prior to the passage of Amendment E, forward contracts comprised an integral part of SFI's livestock trade, with a substantial number of the agreements being executed with out-of-state corporations. Yet SFI has ceased to use such contracts because, as Ivan Sjovall testified, it is "illegal" under Amendment E. *Id.* at ¶ 39. Just as with HFI, this has led to a decline in customers: in 1997, SFI had approximately twenty-two cattle-feeding accounts; it now has only seven. *Id.* at ¶¶ 40-43. It is not hard to imagine the fallout—SFI is in danger of becoming insolvent. As Sjovall himself put it, "we are in a time of our life where somebody else voted to totally ruin our business." *Id.* at ¶ 45.

Sjovall further testified that his feedlot is "going to be a very hard place to sell." *Id.* at ¶ 44; Sjovall Dep. at 23 (SOF Ex. 10). A potential (but ultimately uninterested) buyer summed up Sjovall's predicament: while his lot is attractive, the restrictions Amendment E imposes on its operation are not. SOF ¶ 44.

*Frank D. Brost.* Frank Brost is the sole shareholder in Brost Land & Cattle Company, Inc. ("Brost Land & Cattle"), a cow-calf ranch in Jones County, South Dakota. SOF ¶ 46. Neither Brost nor any of his family members reside on, or actively engage in day-

- 7 -

to-day labor and management of, his ranch; therefore, it is "not exempt as a corporate entity under the provisions of Amendment E." *Id.* at ¶ 48.

As a non-exempt corporation, Brost Land & Cattle is precluded from conducting any future livestock business whatsoever. Nonetheless, to the extent he has been able, Brost has attempted to handle his business as he did prior to Amendment E's enactment, not in the least because of the enormous financial burden associated with converting to a sole proprietorship and his belief that the measure is unconstitutional. *Id.* at ¶¶ 49-51. Brost has encountered significant roadblocks along the way, such as being denied the chance to embark on product-enhancing, profitable deals with out-of-state corporate entities. *Id.* at ¶ 52.

Brost's difficulties with administering his ranch are only intensified by the impediments to selling it. Amendment E virtually eliminates the one subset of buyers likely to be willing and able to purchase a ranch of its size—limited liability entities. *Id.* at ¶ 53.

**Donald Tesch.** Don Tesch and his wife, Lisa, live and work on their hog-finishing farm, from which they derive 60-70% of their income. SOF ¶¶ 54-56. The only farming activity Tesch carries out on the premises is finishing hogs for Harvest States Cooperative ("Harvest States") under a retained-ownership agreement. This type of exclusive arrangement is not unusual. Rather, it is industry practice to raise hogs for one entity at a time in order to maintain biosecurity and ensure that no cross-contamination occurs. *Id.* at ¶ 57, 59.

- 8 -

Tesch entered his current, ten-year contract with Harvest States in 1996. To fulfill that contract, he secured a loan to build a suitable barn for raising hogs. At the time he built the barn, Tesch anticipated constructing a second, adjacent hog-finishing unit; therefore, he installed utility and water lines (as well as other supports) with the capacity for two barns. *Id.* at ¶ 57-58. Were it not for Amendment E, Tesch could have built that second barn in early 1999, when Harvest States offered him a new contract to raise additional pigs. However, the cooperative withdrew its offer, advising Tesch that the Amendment foreclosed not only that agreement but also any extension of his 1996 contract. *Id.* at ¶¶ 60-61. Harvest States was presumably referring to its inability to qualify as an exempt cooperative under Section 22(2), thus making its ownership of livestock in South Dakota unlawful. *Id.* at ¶ 60; S.D. Const. art. XVII, § 22(2).

Tesch testified that upon the expiration or cancellation of his 1996 agreement with Harvest States, he can neither "contract with anyone under the provisions of Amendment E to custom feed their livestock" nor convert his barn for use in another farming operation. SOF ¶¶ 62-64; Tesch Dep. at 28 (SOF Ex. 13). In light of these developments, Tesch's income is, not surprisingly, "drastically" lower than it would otherwise have been. SOF at ¶ 63. His financial prospects look so dim that he believes his family will be forced out of farming. *Id.* at ¶ 65.

***William A. Aeschlimann.*** The vast bulk of Bill Aeschlimann's business is feeding and growing lambs owned by third parties. In a typical year, at least 50% of the lambs raised

on his two family-run feedlots are owned by out-of-state entities. In Aeschlimann's judgment, the great majority of those entities are banned from livestock ownership in South Dakota because they operate in limited liability form and do not fall within any of Amendment E's exemptions. SOF ¶¶ 66-67, 70.

At present, Aeschlimann has not made his customers fully aware of the ramifications of Amendment E and continues to feed lambs owned by non-exempt, out-of-state corporations. He has no other option—the feedlots are his sole source of income and so the revenue he derives from these now-prohibited contracts are business-sustaining. *Id.* at ¶¶ 69, 70-72. Once the State brings a halt to this practice, Aeschlimann's days in South Dakota agriculture are over; he does not have access to the financing required to replace the affected portion of his business with self-owned lambs. *Id.* at ¶¶ 73-74.

Aeschlimann's losses are not all in the foreseeable future. Some have already occurred. For example, he entered a lucrative lamb grow-out agreement with Harvest States, under which the cooperative would retain ownership of the animals. Harvest States backed out of the contract, informing Aeschlimann that it could not deliver the animals for one reason: because it is a non-exempt, out-of-state cooperative, the transaction would be illegal under Amendment E. SOF ¶ 76.

## APPLICABLE STANDARD

It is the burden of the party bringing a motion for summary judgment to show that there is no genuine issue concerning any material fact and that entry of judgment as a matter

of law is warranted. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). In judging whether this standard has been met, the evidence "must be viewed in the light most favorable to the opposing party," *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), and "all justifiable inferences are to be drawn in his favor," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

**Because Several Individual Plaintiffs In This Suit Are Members Of SDFB And SDSGA, Each Organization Has Representational Standing And Defendant-Intervenors' Motion For Summary Judgment Must Be Denied**

"It has long been settled that '[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members.'" *UAW v. Brock*, 477 U.S. 274, 281 (1986) (citation omitted). Under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), an association may litigate in this representative capacity when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Whether the individual members of an association have standing (prong one) is evaluated as if they had brought suit directly. That is, a group member must have suffered an "injury in fact" which is "fairly traceable" to the conduct complained of and will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

- 11 -

(1992). Defendant-intervenors' summary judgment motion hinges on the premise that neither SDFB nor SDSGA has produced evidence of this sort of constitutionally-mandated "injury." *See* Def-Ints. Br. at 5-6. Defendant-intervenors are wrong.

In their apparent zeal to exclude SDFB and SDSGA from this case, defendant-intervenors have set forth an edited, incomplete version of the record. Conspicuously absent from their motion is discovery material that *disproves* their "no injury" theory. Defendant-intervenors' omissions are no more obvious than in their selective recital of the deposition testimony of Mike Held, the administrative director of SDFB. While they incorporate portions of Held's deposition in their Statement of Material Facts, they neglect to mention that his testimony ably details the manner in which Amendment E has changed the face of South Dakota agriculture and disrupted the lives of SDFB members. For example, in response to a question posed by counsel for defendant-intervenors, Held testified: "I know dozens of our members that are illegal [under Amendment E] today. Personally know dozens of our members that are illegal today." Held. Dep. at 40 (SOF Ex. 1). When asked again whether there were a "variety of ways that [SDFB] members are negatively impacted by Amendment E," Held confirmed: "That would be correct." *Id.* at 45. Held was also more specific, explaining:

> [M]any [SDFB] members are denied the opportunity to enter into business relationships that would protect them from a liability standpoint. Therefore, they run the risk of exposing their entire operation and their entire life savings.

*Id.* at 45; *see also id.* at 24-26, 42- 44; Held Aff. ¶ 11 (SOF Ex. 2).

- 12 -

In addition, very recently, when answering defendant-intervenors' document requests, SDFB supplied a 1999 membership list which includes the names of plaintiffs Donald Tesch, Frank Brost, and the operator of plaintiff Haverhals Feedlot, Inc., John Haverhals. *See* SOF, Ex. 4. If Held's testimony were not enough to raise doubts about the prudence of bringing this motion—at least with respect to SDFB—this document should have been. Defendant-intervenors' failure to account for this contradictory evidence alone warrants denying summary judgment and allowing SDFB to remain in this lawsuit. *See* 11 James Wm. Moore *et al.*, Moore's Federal Practice § 56.13[1] (3d ed. 2000) ("nonmovant's burden can be carried merely by pointing to facts of record overlooked by the movant").

However, it is not just SDFB that belongs in this case but SDSGA also. Their oversight of record evidence aside, defendant-intervenors are even further off the mark if they presumed that the plaintiff-associations *could not* muster proof of injury to their members. Both SDFB and SDSGA have submitted affidavits which bear out that, in total, five of the plaintiffs before this Court are current members. SOF ¶¶ 5-6, 14, Exs. 2 & 6. Since these litigants are amongst the ranks of SDFB and SDSGA, it is all but a foregone conclusion that, as individuals, they have suffered harm as a result of Amendment E and, therefore, have standing that flows through to their respective organizations. As the Supreme Court has recognized, "[w]hen the suit is one challenging the legality of government action or inaction, [and] . . . the plaintiff is himself an object of the action . . ., there is ordinarily little question that the action or inaction has caused him injury, and that a judgment

# removed for brevity

- 13 -

preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561. Indeed, defendant-intervenors themselves have not contested that the requisite "case or controversy" exists between the state defendants and any of the non-organizational plaintiffs.

Nonetheless, SDFB and SDSGA do not need to rest on general principles or "allegations in the pleadings," much less indulge in conjecture or speculation, (Def-Ints. Br. at 4-5), in order to settle the issue of their members' standing. The evidence of harm to the five member-plaintiffs is concrete and overwhelming. Amendment E's anti-corporate provisions have caused them direct, legally-redressable harm, and will continue to do so, in that

- they have lost (or will lose) the type of valuable accounts required to support their specially-designed finishing operations—namely, contracts for feeding corporate-owned animals;

- they have been precluded from forward contracting livestock to limited liability buyers and so have lost money and customers, as well as their competitive edge and future viability;

- their farms are all but unsaleable because potential buyers are either forbidden from farming in South Dakota or are unwilling to purchase businesses whose operations are so seriously curtailed by Amendment E; and

- those who have not yet complied with the Amendment (because it is not economically feasible for them to do so) face the imminent risk of having all, or a substantial portion, of their operations shut down by the State now that the sensible ownership structures or sound business practices they have used for years are prohibited.

- 14 -

In sum, by depriving the member-plaintiffs of the ability to form ventures and utilize techniques prevalent in United States agriculture, Amendment E has not simply extinguished previously-available sources of revenue, but, in their own words, threatens to put them "out of business" and end their "future in farming." *E.g.*, SOF ¶ 74; 65. *See also* SOF ¶ 45 ("If something isn't done with this law within the next twelve months, we will file bankruptcy."). These are no "abstract concerns."[2] *Hunt*, 432 U.S. at 342-44 (apple producers had cognizable injuries where statute caused them to "lose accounts;" abandon traditional labeling procedures, "thus diminishing the efficiency of their marketing operations;" and "obliterate Washington State grades" from containers at their own cost).

With this compelling evidence of injury, there can be no doubt that members of SDFB and SDSGA have standing. By every measure, the member-plaintiffs have sustained, or are imminently in danger of sustaining, harm of "sufficient immediacy and ripeness to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 516 (1975). *See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 120 S. Ct. 693, 704-05 (2000) (members of

---

[2] That the State may not yet have brought its full enforcement powers to bear does not render plaintiffs' impending injuries too remote for standing purposes. This case does not present a scenario in which "some member might hypothetically be affected some day." *Associated Gen. Contractors of Am. v. Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998). The "likelihood of enforcement" of the statute and the aggravation of plaintiffs' current injuries is all too near. *See Pennell v. City of San Jose*, 485 U.S. 1, 7-8 (1988) (since association members were subject to terms of ordinance, it was not "'unadorned speculation'" to conclude that the law would be enforced against them) (citation omitted).

environmental groups had standing where their injuries stemmed from the fact that they lived near facility that was emitting pollutants or used land surrounding it for recreation); *Mausolf v. Babbitt*, 85 F.3d 1295, 1301-02 (8th Cir. 1996) ("injury-in-fact" established where association's members averred that lifting snowmobiling restrictions would detract from their enjoyment of national park they had visited in the past and planned to again the "near and identifiable future"). And since that damage was inflicted by the enactment of Amendment E, it will—and only can be—remedied by the measure's invalidation. *See, e.g., Friends of the Earth*, 120 S. Ct. at 706 ("for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress"); *Rosebud Sioux Tribe v. Gover*, 104 F. Supp. 2d 1194, 1199 (D.S.D. 2000) (finding that defendant-intervenors had representational standing; "the initiation of this litigation by plaintiffs challenges the validity of the Assistant Secretary's decision to void the lease and a decision by this Court in favor of defendants would retain the power and effect of the Assistant Secretary's action and prevent plaintiffs from going forward with the project").

Although defendant-intervenors contest the ability of SDFB and SDSGA to satisfy only the first of the *Hunt* requirements for organizational standing, it is equally clear the plaintiff-associations fit comfortably within the remaining prongs. As to the second prong—*i.e.*, that SDFB and SDSGA are acting in service of interests germane to their purposes—in prosecuting this action, the organizations seek to restore their members' access

- 16 -

to well-established, often financially necessary, means of transacting business in the agricultural sector. *See* SOF ¶¶ 7-10, 16-18. Securing relief for its members from the devastating impact of Amendment E is therefore central to (i) SDFB's mission of protecting and enhancing the "social, economic, and personal status of South Dakota farm and ranch families, " (SOF ¶¶ 3, 7-10; Held. Aff. ¶¶ 7, 14-15 & Ex. B thereto); and (ii) SDSGA's purpose of protecting and promoting "the personal and economic interests of lamb and sheep growers in South Dakota,"(SOF ¶¶ 15-18; Aeschlimann Aff. ¶¶ 11, 9 & Ex. A thereto). *See Hunt*, 432 U.S. at 344 (state commission acted in furtherance of its goal to protect and advance the market for Washington apples by raising constitutional challenge to statute in an effort "to secure the industry's right to publicize its grading system" and eradicate injuries to its constituents).

With respect to the third element, nothing in this lawsuit *requires* the participation of individual members of SDFB or SDSGA because plaintiffs are requesting declaratory and injunctive relief—a ruling that Amendment E is unconstitutional and hence cannot be enforced— not monetary damages. *Warth*, 422 U.S. at 515 (if an "association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured"). Thus, "[i]ndividualized proof from the members is not needed." *Associated Gen. Contractors*, 159 F.3d at 1181 (action by contractors' association seeking injunction against enforcement of project labor agreements as violative of ERISA

- 17 -

could be resolved in group context). If Amendment E were struck down, every SDFB and SDSGA member affected by the measure, not just those named in this complaint, could revert to their former methods of doing business without any targeted determination as to how, precisely, they had been injured.[3]

Though defendant-intervenors may argue otherwise, that SDFB and SDSGA have not supplied comprehensive lists of which or "how many" of their members farm in limited liability form or have experienced "changes in [their] revenues or business opportunities due

---

[3] The representational standing of SDFB and SDSGA makes it unnecessary for this Court to reach the question of whether the groups also have standing in their own right. Still, defendant-intervenors are incorrect that SDSGA "conceded that their organization is not impacted by Amendment E." Def-Ints. Br. at 6. Aeschlimann testified only that he was *not aware* of "any independent Sheep Growers Association effect arising from Amendment E." SDFB & SDSGA Resp. to Def-Ints' SOF 4. This indeterminate statement has little, if any, bearing on whether SDSGA has standing apart from its members, let alone leads to the conclusion that *SDFB* does not. *See* Def-Ints. Br. at 6. In any event, that both organizations face the real prospect of diminished monetary support from their members due to the drain Amendment E places on farmers' finances shows that "the interests of [SDFB and SDSGA themselves] may be adversely affected by the outcome of this litigation." *Hunt*, 432, U.S. at 344 (commission itself had standing as "[i]n the event the North Carolina statute results in a contraction of the market for Washington apples or prevents any market expansion that might occur, it could reduce the amount of the assessments due the Commission and used to support its activities"); SOF ¶¶ 4, 13 (SDFB and SDSGA rely on dues and/or contributions from their members to carry out their purposes and meet their goals). Moreover, just as defendant-intervenors expended funds in supporting Amendment E, SDFB has "'devote[d] significant resources to identify and counteract the defendant[s'] unlawful practices'"—from fighting to keep Amendment E off the ballot and voted into law to drafting comments in opposition to the implementing rules. *South Dakota Farm Bureau, Inc. v. South Dakota*, 189 F.R.D. 560, 563 (D.S.D. 1999) (finding that DRA and SDRC had standing to intervene in this suit) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see* SOF ¶ 9; Held Aff. ¶¶ 13-14.

to the passage of Amendment E," (Def-Ints. Br. at 5-6), in no way undercuts their showing of standing. Defendant-intervenors might hope that they could acquire such data, but its absence does not "foreclose the possibility" that SDFB and SDSGA are competent to bring this suit on behalf of their members. *Addickes*, 398 U.S. at 158 (summary judgment must be denied where moving parties' submissions did not controvert existence of element critical to plaintiff's case). It is enough for an association to do exactly as SDFB and SDSGA have done—to identify certain members who have been harmed, or face a realistic danger of harm, due to the operation or enforcement of the challenged law. *See UAW*, 477 U.S. at 286 (finding that union could litigate action in a representative capacity because "at least some members of the UAW would have had standing to bring this suit in their own right"). In fact, singling out just one member who has been harmed is sufficient. *See Warth*, 422 U.S. at 511 (to make out a justiciable case, the organization "must allege that its members, *or any one of them*, are suffering immediate or threatened injury") (emphasis added).

    Any suggestion that this requirement be more stringent is not only unsupported by constitutional doctrine, but would also be particularly ill-advised where, as here, naming members who are affected by the law may well expose them to prosecution. Given SDFB's widespread, diverse membership (numbering in the thousands) across typical South Dakota farm enterprises and structures, and SDSGA's roll of 300-plus participants in the sheep industry, it reasonably follows that, in each group, there are many more individuals—in addition to the named plaintiffs and the "dozens" referenced by Mike Held—whose hands

are tied by Amendment E. But to litigate this case on their behalf, SDFB and SDSGA have no obligation to search out and disclose who those members are.

The principle of organizational standing acknowledges that it is "'practical judicial policy, when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, . . . to permit the association or corporation in a single case to vindicate the interests of all.'" *UAW*, 477 U.S. at 290 (citation omitted). The presence of SDFB and SDSGA before this Court serves that policy well. They simply seek a reprieve for their numerous farm-family members whose operations have been crippled by the restrictions of an unconstitutional law.

## CONCLUSION

For all the foregoing reasons, plaintiffs South Dakota Farm Bureau, Inc. and South Dakota Sheep Growers Association, Inc. respectfully request that the Motion for Partial Summary Judgment filed by defendant-intervenors Dakota Rural Action and South Dakota Resources Coalition be denied on the basis that SDFB and SDSGA have standing to bring the present suit.

Dated this 6th day of November, 2000.

- 20 -

SOUTH DAKOTA FARM BUREAU, INC.
SOUTH DAKOTA SHEEP GROWERS
 ASSOCIATION, INC.

By: *[signature]*
One of Their Attorneys

Richard O. Gregerson
Susan M. Sabers
Woods, Fuller, Shultz & Smith
300 South Phillips Avenue, Suite 300
Post Office Box 5027
Sioux Falls, South Dakota 57117-5027
(605) 336-3890

Timothy S. Bishop
Steffen N. Johnson
Nicola Jackson
Mayer, Brown & Platt
190 South LaSalle Street
Chicago, Illinois 60603
(312) 782-0600

Professor David S. Day
315 Forest Avenue
Vermillion, SD 57069

L:\23090\BRIEFS\sheep-opposing summary judgment.wpd