FILED

NOV 08 2000

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| SOUTH DAKOTA FARM BUREAU, INC., SOUTH DAKOTA SHEEP GROWERS ASSOCIATION, INC.; HAVERHALS FEEDLOT, INC.; SJOVALL FEEDYARD, INC.; FRANK D. BROST; DONALD TESCH; WILLIAM A. AESCHLIMANN; SPEAR H. RANCH, INC.; MARSTON HOLBEN, MONTANA-DAKOTA UTILITIES CO.; NORTHWESTERN PUBLIC SERVICE; AND OTTER TAIL POWER COMPANY, <br><br> PLAINTIFFS, <br><br> -vs- <br><br> MARK W. BARNETT, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF SOUTH DAKOTA, AND JOYCE HAZELTINE, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE OF SOUTH DAKOTA, <br><br> DEFENDANTS, <br><br> and <br><br> DAKOTA RURAL ACTION; AND SOUTH DAKOTA RESOURCES COALITION, <br><br> DEFENDANT/INTERVENORS. | CIV. 99-3018-CBK <br><br><br><br><br><br><br><br> **BIG STONE PARTNERS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Responding to defendants' statement of material facts in support of their motion for partial summary judgment, Montana-Dakota Utilities Company, NorthWestern Public Service and Otter Tail Power Company (hereinafter, collectively "The Big Stone Partners," or individually "MDU," "NWPS," or "Otter Tail") state as follows:

1.  Deregulation of the electric generation, transmission, and distribution industry is currently being reviewed by Congress and by some states. Doc. 96, Complaint ¶ 110; Deposition of Don Ball, Montana-Dakota Utilities Co., Director of Regulatory Affairs, Motion Exhibit B (hereinafter Motion Exh. __") at 13-14, 17. Congress has been considering deregulation issues for several years. It is unlikely to act this session. Id. RESPONSE. Admitted. However, the District of Columbia and 24 states, including Montana, have adopted deregulation. (Exhibit C) At least 12 states have required or pushed for divestiture of generation or transmission, or both.[1] The June

---

[1] Attached as Exhibit B is the September 1999 report prepared by the Edison Electric Institute outlining the status of restructuring in the electric power industry. At page 3, the 24 states that have taken final action toward retail competition are marked with an asterisk. Of those states, the following have implemented rules mandating or requiring consideration of divestiture of transmission or generation assets. Arizona's restructuring plan includes four options for transition cost recovery: estimating revenue lost from departing customers, determining revenues required to meet minimum financial ratios, divestiture, or some combination of the three. Arkansas requires functional unbundling of generation, transmission and distribution and requires each transmission owning utility to transfer operation of its transmission facilities to an independent system operator (ISO) or other independent entity. Illinois requires unbundling generation from transmission and distribution, and utilities will eventually be required to transfer operation of transmission services to an ISO. Maine requires all utilities to divest all non-nuclear generation, with limited exceptions. Maryland provides that divestiture of generation assets may not be ordered, but the Public Service Commission must require functional, operational, structural or legal separation between the utility's regulated businesses and its nonregulated businesses. Massachusetts does not mandate divestiture of generating facilities, but encourages it by offering utilities recovery of all their transition costs if they divest. In Montana, while not mandated by the retail competition law, Montana Power Company sold most of its hydro and thermo-generating facilities and associated transmission as a part of its goal of exiting the generation market, and PacifiCorp sold its Montana distribution facilities to an electric cooperative. New Hampshire has ordered divestiture of generation by utilities in the state and the separation of competitive and noncompetitive functions. New Jersey does not require divestiture across the board, but authorizes the Board of Public Utilities to require functional separation of generation and/or the sale of some or all of a utility's generation facilities if necessary to reduce potential market power. In response, two utilities have decided to sell their generation facilities. New Mexico requires separation of generation from transmission and distribution. Ohio requires utilities to transfer control of transmission facilities to an
(continued...)

2000 status of the two Federal bills is attached as Exhibit A. MDU does business in Montana.

2. Neither the South Dakota Legislature nor the South Dakota Public Utilities Commission have required deregulation of the electric industry. Doc. 96, Complaint ¶ 111; Ball Deposition, Motion Exh. B at 14, 20-21; Deposition of Bernadeen Brutlag, Otter Tail Power Company Manager of Regulatory Services, Motion Exh. C at 8; Deposition of Rodney Leyendecker, Vice President for Finance and Regulatory Affairs for Northwestern Public Service, Motion Exh. D at 11, 12.

RESPONSE. Admitted.

3. Deregulation activities in other states have been unique to that state. Brutlag Deposition, Motion Exh. C at 12.

RESPONSE. The question and answer relevant to this assertion are as follows:

Q: Is it your understanding, do you know whether any regulatory authorities will require that Otter Tail Power Company divest itself of some of its business operations such as generation, transmission or distribution?

A: Every state that has gone to retail competition has done it slightly differently, even within the state each company has had to negotiate its own plan. So I don't know, that would really be a speculation on my part to say that, yes, we will have to, but it is conceivable that when any of our states come to deregulation we could be required to unbundle, or to divest ourselves of some of our assets.

---

[1](...continued)
independent entity. Oklahoma's 1997 Electric Restructuring Act requires implementation of retail competition by 2002, which must include a provision that generation be functionally separated from transmission and distribution.

3

      See Exhibit B which describes the provisions in each of the 24 states ordering deregulation.

4. One method of deregulating the electric industry would be to require functional separation of the major components of utility operations (generation, transmission, and distribution). Ball Deposition, Motion Exh. B at 17, 18. Functional separation would mean that a utility company would retain all its assets, but would account separately for each of these major components. Ball Deposition, Motion Exh. B at 17, 18. Each utility would operate separate business units or divisions for each type of function (generation, transmission, or distribution) within the same company. Brutlag Deposition, Motion Exh. C at 12. Some state have already implemented this type of deregulation. Ball Deposition, Motion Exh. B at 17, 18.

    RESPONSE. Admitted. However, the ability of each utility to explore all business options in a deregulated environment is adversely affected by Amendment E. The flexibility to divest transmission assets, for example, is adversely affected by the increased cost to any purchaser. Therefore, the asset in the hands of the utility is worth less because a prospective purchaser must factor in the cost of Amendment E compliance to the purchase price.

5. Another conceivable method of implementing deregulation would be to require electric utility companies to divest, sell, or "spin off" major components of their business (transmission,

4

generation, or distribution), or to otherwise divest assets. Brutlag Deposition, Motion Exh. C at 12.

RESPONSE. Admitted.

6. At the present time there is no federal law or Federal Energy Regulatory Commission (FERC) requirement that would require electric utilities to sell off major components of their business or create separate and distinct companies in order to allow for competition. Leyendecker Deposition, Motion Exh. D at 9-11.

RESPONSE. Admitted.

7. Although the FERC is "moving the regulatory industry" toward competition for wholesale transmission rates, it would be speculation to state how far FERC will go in requiring ownership or management changes. Brutlag Deposition, Motion Exh. C at 21.

RESPONSE. Admitted.

8. At the present time, the FERC has not indicated that it will require electric utilities to change the ownership of transmission facilities. Brutlag Deposition, Motion Exh. C at 21.

RESPONSE. Admitted.

9. FERC has issued Order 888 pertaining to wholesale electric transmission services. Under Order 888, electric utilities are required to file transportation rates for the carriage of electric energy. These rates are separate and apart from the sale of energy itself. Leyendecker Deposition, Motion Exh. D

at 9. Consistent with this Order, electric utilities are required to keep a separate set of books for transmission lines. FERC Order 888 does not necessitate creating a separate company. Leyendecker Deposition, Motion Exh. D at 9-11. Likewise, FERC does not require selling transmission lines. FERC is also starting to require participation in a regional transmission organization (TRO) or independent system operation (ISO). These organizations run a network of transmission lines owned by individual utilities. This circumstance does not require utilities to have separate companies for transmission services, or require the divestiture of any assets. Leyendecker Deposition, Motion Exh. D at 11.

RESPONSE. The statement contains a typographical error in that a regional transmission organization is known as an RTO, not a TRO.

    Mr. Leyendecker's testimony at the pages referenced clearly indicates that divestiture of transmission assets mandated by FERC "is on its way."

10. Although each of the three electric utilities involved in this action are studying the deregulation issue, their written strategic documents do not include any mention of plans to divest or "spin off" any of their assets due to deregulation. Big Stone Partners' Response to State Defendants' Request for Production of Documents, Motion Exh. E at 3, 4, 5-18.

RESPONSE. Admitted.

6

11. Although each of the three electric utilities involved in this action have developed written documents showing the status of its efforts regarding deregulation, such plans do not indicate which functions the utility would continue to operate and which functions that utility would "spin off," in the event divestiture is required. Big Stone Partners' Response to State Defendants' Request for Production of Documents, Motion Exh. E.

RESPONSE. Admitted.

The Big Stone Partners do not propose to respond to the remainder of the Statement of Material Facts, as they relate to the claims responded to by the agricultural industry plaintiffs, who will separately address those issues.

Dated this 8th day of November, 2000.

         MAY, ADAM, GERDES & THOMPSON LLP

         BY_____
         DAVID A. GERDES
         Attorneys for the Big Stone Partners
         503 South Pierre Street
         P.O. Box 160
         Pierre, South Dakota 57501-0160
         Telephone: (605)224-8803
         Telefax: (605)224-6289

## CERTIFICATE OF SERVICE

David A. Gerdes, of May, Adam, Gerdes & Thompson LLP hereby certifies that on the 8th day of November, 2000, he mailed by United States mail, first class postage thereon prepaid, a true and correct copy of the foregoing in the above-captioned action to the following at their last known addresses, to-wit:


Richard O. Gregerson
Woods, Fuller
P.O. Box 5027
Sioux Falls, SD 57117-5027

Timothy S. Bishop
Steffen N. Johnson
Nicola Jackson
Mayer, Brown & Platt
190 S. LaSalle Street
Chicago, IL   60603

David S. Day
University of South Dakota
Law School
414 East Clark Street
Vermillion, SD   57069

Roxanne Giedd
Assistant Attorney General
500 East Capitol Avenue
Pierre, SD   57501-5070

Thomas P. Tonner
Tonner, Tobin & King
P.O. Box 1456
Aberdeen, SD   57402-1456

Virginia Brannon
Jay Tutchton
Earthlaw
University of Denver
Forbes House
1714 Poplar Street
Denver, CO   80202

John H. Davidson
University of South Dakota
School of Law
414 E. Clark Street, Rm. 215
Vermillion, SD   57069

Robert V. Broom
Broom, Johnson & Clarkson
310 Flatiron Building
1722 St. Mary's Avenue
Omaha, Nebraska   68101

Timothy J. Langley
Attorney at Law
401 East 8th Street, #200
Sioux Falls, SD   57103

/s/ David A. Gerdes