

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



| | |
|---|---|
| SOUTH DAKOTA FARM BUREAU, INC.; SOUTH DAKOTA SHEEP GROWERS ASSOCIATION, INC.; HAVERHALS FEEDLOT, INC.; SJOVALL FEEDYARD, INC.; FRANK D. BROST; DONALD TESCH; WILLIAM A. AESCHLIMANN; SPEAR H RANCH, INC.; MARSTON HOLBEN; MARSTON AND MARION HOLBEN FAMILY TRUST; MONTANA-DAKOTA UTILITIES CO.; NORTH-WESTERN PUBLIC SERVICE; and OTTER TAIL POWER COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>JOYCE HAZELTINE, in her official capacity as Secretary of State of South Dakota, and MARK BARNETT, in his official capacity as Attorney General of South Dakota,<br><br>    Defendants,<br><br>and<br><br>DAKOTA RURAL ACTION and SOUTH DAKOTA RESOURCES COALITION,<br><br>    Defendant-Intervenors. | Civ. No. 99-3018 CBK<br><br><br>DEFENDANTS HAZELTINE AND BARNETT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT-STATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING EQUAL PROTECTION AND BIG STONE PARTNERS' REPLY BRIEF OPPOSING STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

In reply to Plaintiffs' Opposition to Defendant State's Motion for Partial Summary Judgment Regarding Equal Protection, Doc. 123, and Big Stone Partners' Reply Brief Opposing State Defendants' Motion for Partial Summary Judgment, Doc. 124, Defendants Hazeltine and Barnett submit the following:

A.   <u>The Claims Brought by the Utility Plaintiffs Based Upon
Deregulation of the Electric Industry Are Not Ripe for
Judicial Review</u>.

As part of their Motion for Partial Summary Judgment,
Defendants Hazeltine and Barnett asserted that the issue raised
by the three electric utility plaintiffs in this case regarding
electric deregulation is not ripe for consideration by the Court.
The Plaintiff Utilities (Montana-Dakota Utilities Company,
Northwestern Public Service, and Otter Tail Power Company) filed
a response asserting that the deregulation issue is only "one
aspect of the ultimate issue" and should not be separately
considered under a ripeness analysis.  Big Stone Partners' Reply
Brief, Doc. 124, at 2.  In the alternative, Plaintiff Utilities
assert that the deregulation issue would independently survive a
ripeness analysis because it "carries with it sufficient
operational inevitability to warrant consideration."  <u>Ibid.</u>

It is apparent from Big Stone Partners' Response to
Defendants' Statement of Material Facts in Support of Defendants'
Motion for Partial Summary Judgment, Doc. 124, Ex. A, that there
is no significant dispute among the parties regarding the status
of electric utility deregulation in this country.  Several states
have considered and enacted various deregulation laws.  Although
an employee of one of the Plaintiffs has indicated that
deregulation at the federal level by the Federal Energy
Regulatory Commission is "on its way," the FERC has not
deregulated the electric utility industry.  <u>Id.</u> at ¶ 6.  Congress
has not taken this step either.  <u>Id.</u> at ¶ 1.  In other words,

although the electric utility industry believes that deregulation is inevitable, the extent and timing of such deregulation is unknown and is dependent upon the vagaries of the political process.  Despite Utility Plaintiffs' stated confidence in the "operational inevitability" of electric deregulation, none of the three utilities produced any documents during discovery which would reveal that they are engaged in planning efforts of any detail whatsoever regarding restructuring or other planning that would take place upon deregulation.

Against this background, Plaintiff Utilities assert that the deregulation question is only one factual aspect of the case and should be rolled into an overall determination on the "ultimate issue" of the constitutionality of Amendment E.  Yet it is fairly clear in reviewing the Amended Complaint (Doc. 96) that the Plaintiff Utilities have raised the deregulation issue as one of three or four issues giving rise to the overall constitutional claims.  Doc. 96, Amended Complaint, ¶¶ 107-10.  As an issue in this case, the Plaintiff Utilities have separately claimed that "Amendment E will exacerbate deregulation."  Big Stone Partners' Reply Brief, Doc. 126, at 5.  It is apparent from both the Amended Complaint, as well as the responsive brief, that the deregulation issue is intended to be positioned as a separate issue.  The deregulation issue is not, as suggested by the Plaintiff Utilities, one aspect which can simply be rolled into an overall determination.  Given the uncertainty of the timing and extent of deregulation, considering adverse impacts occurring as a result of deregulation is completely unwarranted.

When necessary, courts deal with this situation by considering the issues which are actually ripe at the time of the litigation.  Then, other issues which are not ripe at that time can be brought at a future time.  Pacific Gas and Electric Co. v. Energy Resources Commission, 461 U.S. 190, 203 (1983).  In Pacific Gas, the United States Supreme Court held that review of one constitutional issue was appropriate (moratorium on new nuclear plants) because it was presently in effect.  However, the Court did not consider another provision of the same statute conditioning new construction of a nuclear plant on future state energy commission findings that adequate storage is available to handle the waste.  The Court held that it would be premature to rule on the constitutionality of this waste storage provision since the state energy commission had not made the factual finding as required by the Act.  Id. at 203.  The Court did not take the position that since one issue was being considered, another more speculative issue must necessarily be rolled into the case.

Surprisingly, the Plaintiff Utilities cite to Meadows of West Memphis v. City of West Memphis, 800 F.2d 212 (8th Cir. 1986).  The West Memphis decision does not attempt to roll the future action of a legislative body into the facts of a presently pending case.  There, the court specifically held that the city's rejection of public financing for an apartment complex for one year constitutes the presence of real injury.  The court held that it was proper to consider the one-year delay issue and the

legal effect of the delay itself.  This was not a situation where the court considered future decision making.  Indeed, the court stated that it was not inclined to become entangled in "abstract disagreements over the meaning of executive or administrative decision making before the process has become concrete" or to "sit in final judgment over an Act of Congress before it was necessary to do so."  Id. at 214.  In other words, the Eighth Circuit determined that it is proper to address an issue to the extent that a controversy exists, and no more.

Lest there be concern regarding piecemeal litigation, the Plaintiff Utilities have made the choice of filing a lawsuit now (before legislative action on deregulation has occurred).  If the Plaintiffs' desire was to avoid piecemeal litigation and to roll together all issues in one lawsuit, Plaintiff Utilities had the choice of waiting to file action after deregulation laws were enacted.[1]

---

[1] Defendants also chose to present this case in federal rather than state court.  By referring to "the possible occurrence of other, future injuries" (Big Stone Partners' Reply Brief, Doc. 126, at 6) and filing the damage calculation document, Doc. 126, Exhibit B, Big Stone Partners' Reply Brief may be signaling an intent to file a money claim against the state. Obviously, such a money claim could not be brought in this Court due to the Eleventh Amendment.  Moreover, the Plaintiff Utilities have not attempted to ask this Court to resolve any predicate legal questions relating to a takings analysis (nor should they). The Plaintiff Utilities have asserted that their challenge is a "facial challenge" and not the type of searching legal analysis involving individual property, the expectations of the parties, and specific damages which would be required within a takings analysis.  See Hodel v. Virginia Surface Mining and Reclamation Ass'n, 452 U.S. 264, 293-94 (1981).  In other words, if Plaintiffs choose to pursue this angle, later litigation will occur anyway.

Plaintiff Utilities' brief next cites to <u>Bob's Home Service, Inc. v. Warren County</u>, 755 F.2d 625 (8th Cir. 1985).[2] <u>Bob's Home Service</u> held that the ripeness test is whether plaintiffs meet the case or controversy requirements of Article III of the United States Constitution and whether prudential considerations justify the present exercise of judicial power. <u>Id.</u> at 627. There, the county had developed a master plan which would not allow for construction of a landfill and the same county had taken the position that the state must necessarily deny a state permit for the same landfill due to the master plan. The Eighth Circuit held that the facts were developed enough to rule on an equal protection challenge to the master plan. The challenge there was not like the one at bar where some future and unpredictable legislative questions regarding the action is being alleged. Questions regarding the pending state permit in <u>Bob's Home Service</u> did not need to be resolved since the facility could not be built anyway due to the master plan. There was no need to wait for future action that would not affect the litigation.

The Plaintiff Utilities also rely on <u>Pacific Gas</u> in support of their position. Similar to the cases set forth above, <u>Pacific Gas</u> supports the Defendants' proposition. Indeed, the two claims in the <u>Pacific Gas</u> case arose from an act which had already been passed by the California legislature. That case did not involve any conjecture about future action by the Congress or a state

---

[2] The Defendants' opening brief at page 5 erroneously characterizes <u>Bob's Home Service</u>. <u>See</u> supra.

legislature.   Further, as stated above, the United States Supreme Court specifically held that one of the issues in Pacific Gas was ripe for consideration, but held that other matter was not sufficiently concrete to justify consideration by the court.

The Plaintiff Utilities rely on The Regional Rail Reorganization Act Cases, 419 U.S. 102, 143 (1974).   Congress had enacted legislation dealing with a national rail crisis precipitated by bankruptcy proceedings.   There, Congress had already enacted the Regional Reorganization Act.   The Rail Act provided that rail properties must be conveyed from railroads to Conrail in return for Conrail securities and that the railroads must continue operating pending reorganization.   The Court addressed the question of whether the Tucker Act is applicable to compensate for takings under the Rail Act.   Further, the Court considered whether the requirement that railroad assets be traded for securities was constitutionally valid (conveyance taking issue).   The Court specifically held that it would hear the conveyance taking issue because the Rail Act was presently in place and mandated the trade of assets for securities.   Id. at 142.   The Rail Act left no choice as to the conveyance.   Id.   The fact that the conveyance had not yet occurred was irrelevant because a congressional act was in place that required the conveyance.   However, the Court did not consider all contentions. Id. at 145, 146.   It held that considerations regarding the method of, or the consideration for, the conveyances were premature because a plan had not yet been developed to implement the Rail Act.   Id. at 147.   The Court specifically made a finding

that the existing law providing for railroad restructuring could be reviewed, but valuation questions which would arise after the law was actually implemented should not be reviewed.  In other words, the Court avoided situations where a speculative determination must be made.

Further, the Plaintiff Utilities rely on In re Workers Compensation Refund, 46 F.3d 813, 821-22 (8th Cir. 1995).  Based on that case, Plaintiff Utilities argue that it is not necessary for the state to actively begin enforcement under Amendment E in order for a lawsuit to occur.  The State has never argued in this proceeding that Plaintiffs must actually be facing enforcement in order to have their day in federal court.

Finally, the Plaintiff Utilities rely on Hodel v. Virginia Surface Mining and Reclamation Ass'n, 452 U.S. 264, 283, 293-94 (1981).[3]  This case was cited by the Defendants to explain that constitutional questions should not be decided until the claimed facts actually exist.  The Utility Plaintiffs use Hodel to assert that whether a matter is ripe or not varies depending on the claim made.  Under Hodel, the Court reiterated its "oft-repealed admonition" that the constitutionality of statutes should not be decided except in an actual factual setting.  Hodel, 452 U.S. at 294-95.  With regard to an as-applied takings claim, the Court

---

[3] The reason for Plaintiffs' initial citation (452 U.S. at 283) is unclear.  There, the Court addressed arguments that federal statutes are unnecessary when existing federal laws cover the same area.  The Court held that consideration of whether existing statutes were adequate is a matter committed to the discretion of the Congress.  It is not clear how this "necessity" argument applies here.

determined that the claim must be considered on an individualized basis where specific parcels of land are involved and specific investment-backed expectations are considered.  On the other hand, takings claims concerning facial challenges such as made in Hodel turn on the mere enactment of the law.  In such unique "facial takings claims," the standard would be whether the act categorically prohibits any owner from any economically viable use of the property described in the act.[4]  Regardless of whether a facial or an "as-applied" challenge is involved here, Plaintiff Utilities have not cited to any case that would require a court to decide whether a challenged state law would exacerbate the result and impacts of anticipated legislation.

B.   Plaintiff's Equal Protection Claims Have Already Been Determined by the Eighth Circuit.

The equal protection clause of the Fourteenth Amendment mandates that no person[5] be denied the equal protection of the law.  This clause, however, coexists "with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups of persons".  Romer v. Evans, 517 U.S. 620, 631 (1996).  The Romer Court explains that this dichotomy between "the principle with the reality" is reconciled by the test applied to equal

---

[4] Again, if this reference to Hodel is intended to signal that the present action will involve any kind of taking claim, such claim was neither pled nor is properly before this Court.  The Eleventh Amendment applies.

[5] A corporation is a "person" under the Fourteenth Amendment and under equal protection analysis.  MSM Farms v. Spire, 927 F.2d 330, 332, cert. denied, 502 U.S. 814 (8th Cir. 1991).

protection analysis.  Id.  Under equal protection analysis, if a law neither burdens a fundamental right nor targets a suspect class, it will be upheld so long as it bears a rational relationship to some legitimate end.  Central State University v. American Association of University Professors, 526 U.S. 124, 127-128 (1999);  Romer, 517 U.S. at 631;  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985). Legislation which employs a suspect classification, or impinges on a fundamental constitutional right, merits stricter scrutiny and will survive only if it is narrowly tailored to serve a compelling governmental interest.  Id.

Plaintiffs assert that an additional middle test, "rational basis with a bite," was followed in Romer and is the appropriate test to apply to the equal protection analysis of Amendment E. Romer, however, neither followed such a test nor applied it.

The "rational basis with a bite" test for equal protection analysis is referred to as early as 1978 in Felix v. Milliken, 463 F.Supp. 1360, 1368 (E.D.Mich. 1978), well before the 1991 MSM Farms decision was issued by the Eighth Circuit, and before the 1996 Romer decision by the Supreme Court.  The Felix Court notes:

> A close examination of the cases that have invoked [this] arguably higher standard of review in equal protection cases not involving previously identified fundamental interests or suspect classifications indicates that these cases divide primarily along two lines:  (1) classification schemes which use illegitimacy as a basis for discriminating between one group and another;  and (2) gender-based discrimination.

_Felix_, 463 F.Supp. at 1368.   Certainly the classifications which Plaintiffs assert were established by Amendment E fit in neither of these categories.

Further, the _Romer_ decision did not refer to this   "rational basis with a bite" test;  instead, its decision is simply that the constitutional amendment there being reviewed lacked _any_ rational relationship to legitimate state interests.  _Romer_, 517 U.S. at 632.  _Romer_ involved a constitutional amendment adopted in Colorado by initiated measure which totally prohibited the enactment of any law or policy, by any state agency or local government,  of any laws which would confer any minority status, quota preferences, protected status, or claim of discrimination upon homosexual persons.  _Romer_, 517 U.S. at 624.   The Supreme Court invalidated this constitutional amendment on equal protection grounds because the law had not been enacted in pursuit of a legitimate government interest.  _Id._ at 632.   The amendment was, to quote the Court, "an exceptional and . . . invalid form of legislation."  _Id._ at 632.   Indeed, the Eleventh Circuit Court of Appeals recently interpreted _Romer_ as applying only to cases where the legislation being attacked is based upon _no_ legitimate state interest.  _Williams v. Pryor_, ___ F.3d ___, 2000 WL 1513756 (11th Cir. 2000).

Even Plaintiffs agree that the "rational basis with a bite" test applies when the legislation involved is so "overly broad" or "far removed" from the asserted legislative justifications that it is "insincere" or "impossible to credit."  Plaintiffs' Opposition to Defendant-State's Motion for Partial Summary

Judgment Regarding Equal Protection, Doc. 123, at 13.  The asserted justification for Amendment E, however, is not one of such tokenism or insincerity.  Indeed, the Eighth Circuit in MSM Farms specifically held that the justification for the Nebraska anti-corporate farming amendment, which is manifestly similar to Amendment E, was not only colorable, but also rational and merited rejection of an equal protection claim.  The only way that Plaintiffs' asserted interpretation of Romer could apply to this equal protection challenge of Amendment E would be for this Court to find that the same justifications which were found rational in MSM Farms are now, with regard to Amendment E, insincere and impossible to credit.

Plaintiffs also cite Allegheny Pittsburgh Coal Company v. County Commission, 488 U.S. 336 (1984), as authority for the "rational basis with a bite" test.  This reference is also misplaced.  Allegheny is unique because it involved legislative actions by county officials which did not comply with the state's own laws or practice, and which lacked any indications of a rational underlying policy.  Nordlinger v. Hahn, 505 U.S. 1, 14-15 (1992).  This decision was made even though the case involved a tax measure, which under equal protection analysis is usually granted even more deference than other measures reviewed under the rational basis test.  The Allegheny decision, like Romer, was based upon legislative actions which clearly had no rational justification, and are not applicable to an equal protection analysis of Amendment E.

12

Amendment E involves none of the classifications subjected to the "rational basis with a bite" test; it is also not legislation based upon no legitimate state interest.  Neither the "rational basis with a bite" test nor the Romer decision apply.

Plaintiffs also assert that the analysis followed by the MSM Farms Court has been "superceded" by the Supreme Court's decision of Romer v. Evans, 517 U.S. 620 (1996).  However, equal protection decisions issued since Romer continue to be premised on the same test used in MSM Farms:  that, so long as a fundamental right or suspect class are not burdened by the legislation, the legislative classification is upheld if it bears a rational relation to some legitimate end.  See, e.g., United States v. Mound, 149 F.3d 799, 801 (8th Cir. 1998) (equal protection challenge to evidentiary rules establishing exceptions to practice of excluding prior bad acts evidence); Von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 378 (8th Cir. 1997) (legislation prohibiting transfer of farmland to aliens).

Thus, the traditional equal protection analysis applied by the MSM Farms Court on the Nebraska anti-corporate farming constitutional amendment also applies to Amendment E.  Although Plaintiffs set out the classes they allege are created by Amendment E, Plaintiffs' Opposition to Defendant State's Motion for Partial Summary Judgment Regarding Equal Protection, Doc. 123, at 5-8, they do not allege that these classes are suspect classes or burden some fundamental rights.  As a result, the "test" applied under equal protection analysis is exactly that applied by the Eighth Circuit Court of Appeals in MSM Farms:

the rational basis test.   Under this test, a statute is constitutional so long as "there is any reasonably conceivable state of facts that could provide a rational basis for" it.   <u>FCC v. Beach Communications, Inc.</u>, 508 U.S. 307, 314 (1993).

The Defendants Hazeltine and Barnett's Motion for Partial Summary Judgment (Doc. 102) regarding the equal protection claim was limited to a claim that the <u>MSM Farms</u> decision of the Eighth Circuit was controlling precedent because of the extreme similarity between the Nebraska constitutional amendment there reviewed, and Amendment E now before this Court.   Equal protection analysis has not, as is alleged by Plaintiffs, been changed by <u>Romer</u>.

Defendants Hazeltine and Barnett, therefore, respectfully request that their Motion for Partial Summary Judgment be granted.

Dated this ___17th___ day of November, 2000.

Respectfully submitted,

MARK BARNETT
ATTORNEY GENERAL


_____
Roxanne Giedd
Assistant Attorney General


_____
Diane Best
Assistant Attorney General
500 East Capitol Avenue
Pierre, South Dakota 57501-5070
Telephone: (605) 773-3215

pld1116.rg(nan)

14

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendants Hazeltine and Barnett's Reply to Plaintiffs' Opposition to Defendant-State's Motion for Partial Summary Judgment Regarding Equal Protection and Big Stone Partners' Reply Brief Opposing State Defendants' Motion for Partial Summary Judgment in the matter of <u>South Dakota Farm Bureau, Inc., et al. v. Joyce Hazeltine, et al.</u>, was served upon each of the following by enclosing the same in envelopes with first class postage, prepaid and affixed thereto, and depositing said envelopes in the United States mail, at Pierre, South Dakota, on this _17th_ day of November, 2000:

Richard Gregerson
Attorney at Law
P.O. Box 5027
Sioux Falls, SD  57117-5027

Timothy S. Bishop
Steffen N. Johnson
Nicola Jackson
Mayer, Brown & Platt
190 S. LaSalle Street
Chicago, IL  60603

David S. Day
Woods, Fuller, Shultz & Smith
P.O. Box 5027
Sioux Falls, SD  57117-5027

David A. Gerdes
Attorney at Law
P.O. Box 160
Pierre, SD  57501-0160

Thomas P. Tonner
Attorney at Law
P.O. Box 1456
Aberdeen, SD  57402-1456

John H. Davidson
USD Law School
414 E. Clark St., Rm. 215
Vermillion, SD 57069

Virginia Brannon
Jay Tutchton
University of Denver
Forbes House
1714 Poplar Street
Denver, CO  80220

Roxanne Giedd
Assistant Attorney General

pld1116.rg(nan)

15