

FEB 1 2 2002



CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| SOUTH DAKOTA FARM BUREAU, INC.;<br>SOUTH DAKOTA SHEEP GROWERS<br>ASSOCIATION, INC.; HAVERHALS<br>FEEDLOT, INC.; SJOVALL FEEDYARD,<br>INC.; FRANK D. BROST; DONALD<br>TESCH; WILLIAM A. AESCHLIMANN;<br>SPEAR H RANCH, INC.; and<br>MARSTON HOLBEN<br><br>             Plaintiffs,<br><br>             v.<br><br>STATE OF SOUTH DAKOTA;<br>MARK W. BARNETT, in his official<br>capacity as Attorney General of<br>South Dakota; and JOYCE<br>HAZELTINE, in her official<br>capacity as Secretary of State<br>of South Dakota,<br><br>             Defendants.<br><br><br>DAKOTA RURAL ACTION; AND<br>SOUTH DAKOTA RESOURCES COALITION<br><br>             Defendant- Intervenors | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 99-CV-3018 CK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT-INTERVENORS' POST-TRIAL BRIEF**

## I.    INTRODUCTION

Defendant-Intervenors request that this Court rule on the instant challenge to Amendment E and also request that such ruling be issued if possible in advance of any election by the voters in which repeal of Amendment E may be considered. Such ruling will allow the voters the benefit of the Court's decision and allow a more reasoned debate on the topic.

Defendant-Intervenors also agree with the positions set forth in the State's post-trial brief, and present the following brief in addition.

## II.    COMMERCE CLAUSE CHALLENGE

Amendment E does not discriminate between in-state and out-of state entities, nor does it attempt to regulate out-of-state commerce, and thus does not burden interstate commerce. Accordingly, the controlling case is Hampton Feedlot v. Nixon, 249 F. 3d 814  (8th. Cir. 2001), and the Commerce Clause challenge must fail without necessity of proceeding to the "Pike" balancing test.

Even assuming *arguendo* that the balancing test is appropriate, Amendment E survives the balancing test set forth in Pike v. Bruce Church, 397 U.S. 137, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970). Where a statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are incidental, courts will uphold the statute unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits. Id at 142.

Unlike so many Commerce Clause cases, the putative local benefits in the instant case are substantial and compelling.  One of the major concerns of the proponents of Amendment E was preservation of the family farm. (Bixler, Tr. 403) The United States has continued to lose family farms at a rate of two percent per year. (Tweeten, Tr. 576) As noted by most of the named

plaintiffs who testified, as well as summarized by Dr. Tweeten, the family farm provides a positive impact on the society. Family farms are characterized by more cohesive families, less divorce, more church going, and lower crime rates. (Tweeten, Tr. 575)

Further, Amendment E acts to lessen the concentration of agriculture, reduce the number of concentrated animal feeding operations, and remove non-qualifying corporations from limited liability. (Thompson, Tr. 225-231) The environmental aspects of Amendment E were also crucial to its supporters. (Napton, Tr. 382) Dr. Cahoon made clear the devastating environmental impact that concentrated animal feeding operations have had in North Carolina, including degradation of air and water quality. (Cahoon, Tr. 763-769) Such concentrated feeding operations also have led to a decline in surrounding property values. (Tweeten, Tr. 570-571)

Amendment E also seeks to avoid distant ownership of farmland by non-qualifying entities. There is an advantage to have owner/operators live on their farms. (Aeschlimann, Tr.144-145) A further problem with distant corporate ownership is that crucial decisions regarding operations are not made in the community. (Tweeten, Tr. 573) Finally, on-site ownership lessens the likelihood of environmental problems. (Thompson, Tr. 225)

Further, other attempts to address the problems above have been unsuccessful. First, citizens were unsuccessful in getting several environmental bills through the South Dakota Legislature in 1997. (Napton, Tr. 383) Second, governmental programs and laws have had only mixed success in dealing with farm related environmental problems. (Tweeten, Tr. 574). Finally, governmental programs have not been successful in saving family farms. (Tweeten, Tr. 578-579)

In contrast to the substantial nature of the putative local benefits of Amendment E, the plaintiff's have at most established a speculative possibility of insignificant impact on interstate commerce. First, it is clear that Amendment E is not protectionist, and in fact Mike Held of the

Farm Bureau even admitted that it was the Farm Bureau's position that Amendment E actually hurts South Dakota farmers rather than protects them against out of state competition. (Held, Tr. 37-38) Further, the evidence from Nebraska is that Initiative 300 has not had an adverse impact on that state's agriculture. As noted by Dr. Tweeten, Nebraska ranked in the top quarter of states in growth in livestock marketing value from 1960-1993, Initiative 300 having been passed in 1982. (Tweeten, Tr. 563-567) Finally, the first hand experience of Nebraska farmer Stanley Rosendahl was that Initiative 300 has not adversely impacted the livestock industry there. (Rosendahl, Tr. 679)

The mere fact that Amendment E may cause a shift in the nature of entities engaging in interstate commerce does not constitute an impermissible burden. Exxon Corp. v. Governor of Maryland, 437 U.S. 117 (1978).  Also, the possibility that Amendment E may harm South Dakota farmers does not violate the Commerce Clause. Hampton Feedlot v. Nixon, 249 F. 3d 814  (8[th.] Cir. 2001)

## III.    EQUAL PROTECTION AND DUE PROCESS CHALLENGES

M.S.M. Farms Inc. v. Spire, 927 F. 2d 330  (8th Cir. 1991) involved a challenge to Initiative 300, the Nebraska equivalent of South Dakota's Amendment E. The Court in that case rejected the equal protection challenge, finding that the Equal Protection Clause was satisfied when the law adopted was rationally related to a legitimate state interest. That case is controlling precedent here, and the substantial state interests set forth above  show a rational basis for Amendment E.

State statutes regarding health and welfare do not violate the Constitution's protection of the right to contract. Burlington Northern R. Co. v. State of Nebraska, 802 F.2d 994 (8th Cir. 1986). As noted previously, Amendment E directly addresses the welfare of South Dakota

citizens, and is designed to protect the family farm, the social fabric, and the environment. Accordingly, it is a valid regulation and does not violate the Due Process rights of the Plaintiffs.

**IV.    THE UTILITIES' "EASEMENT" ARGUMENT IS A RED HERRING**

The Utility Plaintiffs' argument that Amendment E affects their acquisition of new power line and other easements throughout South Dakota is nothing more than a "scare tactic" resting on a contorted reading of Amendment E and South Dakota property law.

As the Court has recognized Amendment E broadly prohibits corporations, such as the Utility Plaintiffs, from acquiring or otherwise obtaining "an interest, whether legal, beneficial, or otherwise, in any real estate used for farming."  Article XVII § 21.  But, the breath of this language is not without limit.  It obviously can be limited by the nature of the "interest" in real estate obtained.  Most importantly, if an easement does not include a right to farm, the owner of the easement has no interest in land used for farming.  The easement owner has an interest in land used to support power poles, nothing more.  See Exhibit. 88 (standard utility easement form under which grantor "reserves the right to cultivate, use, and occupy said land" (emphasis added)).  Under South Dakota law, an easement for a utility right-of-way is a separate, non-possessory estate in land and is not an interest in real estate "used for farming" as defined under Amendment E.

The Utility Plaintiffs badly, but likely intentionally, err in their assumption that the restrictions of Amendment E apply to easements granted solely for the purpose of providing a right-of-way for transmission lines, pipelines and similar utility conveyances.  Easements are separate real property estates and are limited to the purpose and scope enumerated in the grant. The interest acquired is the easement for a utility right-of-way, not for the underlying fee.  A utility easement for right-of-way is not an interest in real estate "used for farming."  Use of a

4

right-of-way easement for utility purposes does not cause a utility to be engaged in farming. As a result, the Utility Plaintiffs in this action have no reason for concern regarding their potential acquisition of new easements.

Under South Dakota law, an easement is "an interest in the land in the possession of another which entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists." Knight v. Madison, 634 N.W.2d 540 (S.D. 2001) (emphasis added). SDCL 43-13-5 provides in part "[t]he extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." Id. Neither the physical size, nor the purpose or use to which an easement may be used can be expanded or enlarged beyond the terms of the grant of the easement. Id.

The court in Musch v. H-D Elec. Coop. Inc., 460 N.W.2d 149 (S.D. 1990), limited the use of the grant to those specified. The Musch court, citing Langazo v. San Joaquin Light & Power, noted:

> The record shows that the owner of the real property granted a "right of way" to the Power Company over a strip of land 20 feet in width. The Power Company had a right to erect a single line of towers or poles thereon and wire suspended thereon. "The rights on any person having an easement in the land of another are measured and defined by the purpose and character of that easement; and the right to use the land remains in the owner of the fee so far as such right is consistent with the purpose and character of the easement." 17 Am. Jur. 993. Appellant had no right to fence the right of way, nor did it have any right to the use or possession thereof, except for limited purposes, such as repair, maintenance and construction, as set forth in the grant. Thus except for the reservations made in the grant, the owner had the same complete dominion and control over this 20-foot strip as he had over the remainder of his property.

32 Cal. App. 2d at 682, 90 P.2d at 829.

Similarly, the recently revised Restatement (Third) of Property, Servitudes § 1.2, cmt. d

(2000) states:

> The holder of the easement or profit is entitled to make only the uses reasonably
> necessary for the specified purpose. The transferor of an easement or profit retains the
> right to make all uses of the land that do not unreasonable interfere with exercise of the
> rights granted by the servitude. For example, the transferor of an easement for an
> underground pipeline retains the right to enter and make any use of the area covered by
> the easement and that does not unreasonably interfere with use of the easement for
> pipeline purposes. The holder of the easement may only use the area for purposes
> reasonably related to the pipeline. Any other interpretation of a right-of-way easement
> would ignore the rule that ". . . function of the law is to ascertain and give effect to the
> likely intentions and legitimate expectations of the parties who create servitudes, as it
> does with respect to other contractual arrangements.

Id. (Introductory Note) p. 494.

The standard utility "Right of Way Easement" form, introduced into evidence by the

Utility Plaintiffs is entirely consistent with the above understanding of property law. See Exhibit

88. Most importantly, pursuant to this standard easement form, the utility company acquires

only the right to construct, operate, maintain, etc. a power line, and the right to cut down trees,

shrubs, etc. that might by necessary for the construction, operation, and maintenance of a power

line. The grantor, (farmer or rancher) specifically retains the "right to cultivate, use, and occupy

said land." Exhibit 88 at 2. Accordingly, a mere utility easement holder has no interest in land

that can be used for farming. The interest in land that can be used for farming is entirely retained

by the farmer. Indeed, were a utility easement holder to "engage in farming" it would illegally

expand the terms of the easement granted.

A conclusion that a right-of-way solely for utility purposes is not an interest in land used

for agriculture is apparent, and is implicit in the general concept of real property estates

developed at common law. Thus, it is far from surprising that during the trial the Utility

Plaintiffs failed to produce any testimony that the very similar I-300 initiative from Nebraska

required any change in power industry operations.  Easements acquired solely to build and maintain power lines, and specifically precluding any right to cultivate land, are not affected by Amendment E.  A contrary conclusion would stand property law on its head and ignore the intent of voters for Amendment E, which to the extent it can be determined, did not contemplate utility easements in any manner.  The utility argument, though creative, is nothing more than an attempt to muddle the issues before this Court with an obvious sideshow.  This is a case about the voters' attempt to limit corporate agriculture, not an effort to restrict utility operations.

V.      **THE ADA IS INAPPLICABLE TO THIS CASE**

The Court has concluded in a post-trial memorandum dated December 12, 2001 that it erred in its earlier ruling dismissing Plaintiffs' Americans with Disabilities Act ("ADA") claim for want of jurisdiction and has asked counsel to bear this situation in mind in presenting their final briefs to the Court.  Accordingly, Defendant-intervenors present the following argument concerning Plaintiffs' previously dismissed ADA claim.

In the first instance, and perhaps to state the obvious, Plaintiffs' ADA claim has not been tried to the Court in that it, technically, was not before the Court during the trial.  Nonetheless, at trial, presumably as an offer of proof, the Plaintiffs did present evidence concerning the physical disabilities of Mr. Brost and Mr. Holben through their testimony.  This evidence was solely relevant to the Plaintiffs' ADA claim.  Accordingly, it does not appear that the Plaintiffs have suffered any prejudice through the Court's "post-trial" resuscitation of their ADA claim.

In any event, regardless of whether or not it has been fully tried, Plaintiffs' ADA claim should still be dismissed as a matter of law.  Simply put, the plain language of the ADA is not applicable to a State Constitutional provision such as Amendment E.

7

Of the four titles of the ADA, only Title II is applicable to state and local governments.

42 U.S.C. § 12132. Title II states:

> No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

42 U.S.C. § 12132.

This provision establishes two prohibitions applicable to public entities.[1] Individuals with a qualifying disability can not be, on the basis of their disability: (1) "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity;" or (2) "be subjected to discrimination by any public entity." These two prohibitions are considered in turn.

The federal regulations implementing the first part of the statutory provision mirror its language almost exactly, providing Title II applies to "all services, programs, and activities provided or made available by public entities." 28 C.F.R. § 35.102(a). This is not ambiguous language. Title II applies only when a local government offers services or programs. Accordingly, it does not apply to Amendment E, which regulates farming. Farming is a private activity conducted by private entrepreneurs. It is in no way a service, program, or activity conducted by the State government.

The second prohibition of Title II, that no individual with a qualifying disability can be, on the basis of that disability, "subjected to discrimination by any public entity" is at least arguably applicable. 42 U.S.C. § 12132. However, the legislative history behind this additional prohibition of Title II indicates that its purpose is to require integrated services for persons with

---

[1] A "public entity" includes "(1) any state or local government; and (2) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 28 C.F.R. § 35.104.

8

disabilities and those without. H.R. Rep. No. 485, 101st Cong., 2d Sess. Pt. 3 (1990). It was not intended to expand the scope of Title II beyond situations concerning the state's provision of benefits and services. Consistently, the Federal Regulations implementing Title II of the ADA focus solely on local government's provision of aid, benefits, and services -- not on the government's regulation of private conduct. See e.g. 28 U.S.C. § 35.130 entitled "general prohibitions against discrimination," but dealing only with the government's provision of benefits and services.

In sum, as the Court observed during the trial concerning this aspect of Amendment E, that the ADA might well prohibit similar conduct by a private employer or those private entities offering public accommodation is neither here nor there. Amendment E is a State regulatory action, but through Amendment E the State does not offer employment or public accommodation, or provide benefits or services to individuals. Accordingly, the ADA is simply inapplicable to the present case.

**VI.    Conclusion**

Amendment E is a constitutionally valid provision. The Defendant-Intervenors request this Court reject the Plaintiffs' challenges.

9

Respectfully submitted,

Dated: _8 Feb 2002_

~~John H. Davidson~~
John H. Davidson
(S.D. Bar # 1726)
University of South Dakota School of Law, Rm 213
414 East Clark Street
Vermillion, SD  57069
(605) 677-6341


Jay Tutchton
EARTHJUSTICE
University of Denver
Forbes House
1714 Poplar St.
Denver, CO  80220
(303) 871-6996

Randy C. Canney
Attorney at Law
1733 High Street
Denver. CO 80218
(303)388-5014

Attorneys for Defendant-Intervenors:
Dakota Rural Action and South Dakota Resources
Coalition

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of DEFENDANT INTERVENORS' POST TRIAL BRIEF in the case of *South Dakota Farm Bureau et al. v. State of South Dakota, Barnett & Hazeltine,* was served by United States mail, first class, postage prepaid upon:

Richard O. Gregerson
Susan M. Sabers
David S. Day                           Roxanne Giedd
Attorneys at Law                       Assistant Attorney General
P.O. Box 5027                          Office of the Attorney General
Sioux Falls, South Dakota 57117-5027   500 East Capitol Avenue
                                       Pierre, S.D. 57501-507

Robert V. Broom
Broom, Johnson & Clarkson
310 Flatiron Building
1722 St. Mary's
Omaha, Nebraska 68102

Thomas P. Tonner
 Attorney at Law
P.O. Box 1456
Aberdeen, S.D. 57402

Patrick J. Anderson, Esq.
P.O. Box 88334
Sioux Falls. S.D. 57109

David Gerdes
Attorney at Law
503 S. Pierre Street
P.O. Box 160
Pierre, S.D. 57501

on this Eighth Day of February, 2002

**John H. Davidson**